GIBLIN, Associate Justice.
The R. E. L. McCaskill Company, by its deed dated April 9, 1920, conveyed to the Bayou Fish Company “block eighteen (18) according to the plat of Niceville, Florida, on file in the office of the Clerk of the circuit court of Okaloosa County”; but, as expressed in the deed, it was the grantor’s intention, despite the reference to the plat, “to convey all land south of hard road and along shore line adjoining Edge’s new store building on the west and E. J. Frie-wald’s line on the east.”
By a deed dated May 16, 1939, the Bayou Fish Company (which had been dissolved), *83 through its surviving directors and trustees, conveyed to Mildred Plew Meigs “the west fifty feet of lot 3, block 18, of Nice-ville as shown and designated on plat 5 of the City of Valparaiso, said plat being on file in the office of the clerk of the circuit court of Okaloosa County, Florida, the said westerly 50 feet of said lot being all that parcel of land lying south of Main Street and between the property of the Gulf Power Company and the property of W. J. Armstrong.” The plat referred to is the same plat mentioned in the prior deed; the street referred to is the hard road mentioned in the prior deed; and the property referred to as that of W. J. Armstrong is the same property as that on which “Edge’s new store building” had been located at the time of the execution and delivery of the prior deed.
On May 26, 1939, Mildred Plew Meigs and Clifford Meigs, her husband, executed and delivered to the appellee, Claude G. Meigs, a deed in- which the description of the property conveyed was the same as the description in the prior deed to the wife from the dissolved corporation.
, In this suit, brought by the appellee, in which he prayed for a reformation by judicial decree of the description in the two last mentioned deeds, the description was reformed (by the decree appealed from) to include “lots 1 and 2 of block 18, according to the plat 5 of Valparaiso (Niceville).”
Before the institution of this suit, the appellants (members of the Edge-Armstrong family) had brought against the appellee an ejectment action in which they asserted title and right of possession to lots 1 and 2 of block 18, according to the recorded plat.
The appellee alleged in his bill for reformation that the property of which he is in possession is the property in block 18 lying between the parcel on which the Edge store building (destroyed by fire in 1933) had been located and the property (in lot 3) which the Bayou Fish Company had conveyed (on September 8, 1927) to the Gulf Power Company. He sought reformation because of his evident need of reformed deeds as weapons with which to defend in the ejectment action his claimed title and right of possession to the portion of the property involved in such action of which he is in possession.
The appellants (the plaintiffs in the ejectment action) were made defendants in the reformation suit because of the necessity for enjoining the prosecution of the ejectment action until the appellee’s right to the reformation sought could be determined. The chancellor below granted (and we think correctly and wisely) the desired interlocutory injunctive relief. His order, by which the appellants were enjoined pendente lite from prosecuting the ejectment action, is not assigned as error.
The principal question for our determination is whether there was error in the chancellor’s final decree by which the description (in the deed of May 16, 1939, from the Bayou Fish Company to Mildred Plew Meigs and in the deed of May 26, 1939,' from Mildred Plew Meigs and Clifford Meigs; her husband, to the appellee, Claude- G. Meigs) — “the west fifty feet of lot 3, block 18, * * * the said westerly 50 feet of said lot being all that parcel of land lying south of Main Street and between the property of the Gulf Power Company and the property of W. J. Armstrong” — was reformed to include “lots 1 and 2 of block 18, according to the plat 5 of Valparaiso (Niceville).”
There was decidedly conflicting and confusing evidence as to where “Edge’s new store building” was located at the time of the execution of the, deed of April 9, 1920, from the R. E. L. McCaskill Company to the Bayou Fish Company, by which, as we have observed, it was the grantor’s intention “to convey all land south of hard road and along shore line adjoining Edge’s new store building on the west and E. J. Frei-wald’s line on the east.” Counsel agree that the west boundary of the land conveyed to the fish company is the east boundary of the parcel on which the Edge store building had been located.
There- was considerable evidence indi-cating- that the store building was -located *84 on both lot 1 and lot 2. The chancellor, however, found that the location of the store • building was west of block 18 and that, consequently, it had occupied no part of either lot 1 or lot 2. This finding led him to the conclusion that by the deed of April 9, 1920, from The R. E. L. McCaskill Company to the Bayou Fish Company the grantor had vested in the grantee title to all of block 18; and to the further conclusion that, because by the deed of May 16, 1939; from the Bayou Fish Company to Mildred Plew Meigs the grantor intended, as shown by the deed itself, to convey all the “land lying between the property of the Gulf Power Company [which admittedly is in lot 3] and the property of W. J. Armstrong [which admittedly is the parcel on which the Edge store building had been located],” the description should be reformed to include all of lots 1 and 2.
The chancellor’s conclusions’ obviously rest on the premise that the Edge store building was located west of block 18, and that, therefore, it had occupied no part of either lot 1 or lot 2 of such block. The validity of the conclusions depends, of course, on tfie soundness of such premise.
While the conflicting and confusing evidence makes it difficult to decide whether the Edge store building occupied any part of lot 2, the pleadings' and proof establish indisputably that the building occupied, a part at least of lot 1.
The appellee himself alleged in his bill that by the deed of April 9, 1920, from The R. E. L. McCaskill Company to the Bayou Fish Company, the grantor conveyed “all of lots 1, 2 and 3 except for a small portion on the north side of lot 1 on which the Edge store building was located.” Other similar admissions in the bill were that at the time of the execution of such deed “there was a store building located on the northerly edge of lot 1, block 18”; that “the store building was known as Edge’s store”; and that “the old Edge-Armstrong store building was located partly where the Spence building is shown on the blue print and extended southeastward partly on lot 1, but occupied a very small portion of the said lot on the north side thereof.”
The appellee’s testimony confirmed the admissions made in his bill.' The fire, which in 1933 destroyed the Edge store building, also destroyed a fish house near the shore line which is the south boundary of block 18. The appellee had been occupying the fish house as a tenant of the Bayou Fish Company. The evidence indicates that the fish house had been located on lot 2; but its location before the fire is of little or no importance. After the fire the appellee built, in 1934, a new fish house, the length of which along the shore was approximately twice the length of the old building. The appellee testified that the new building “overlapped” the lot on which the Edge store building had been located and that he “made a deal with Mr. Armstrong at the time * * * and I agreed to lease his part.” The lease agreement, dated March 1, 1934, was that he should pay the lessors (Joe Edge and Jessie Alma Edge, his wife, Lula Edge, and W. J. Armstrong and Lula Armstrong, his wife) $100 cash, and $100 on March 1st of each year for five years and that, as a part of the consideration, W. J. Armstrong (who was the local postmaster) should be furnished rent-free space in the new building for use as a post office. The agreement was effectuated, the rental was paid and the westerly end of the building was used (for some time prior to W. J. Armstrong’s death) as a post office. The appellee further testified that he discussed with W. J. Armstrong before his death, and with members of the Edge-Armstrong family after his death, “a trade” (which, however, was not consummated), in which he was to “give them title to three lots over across the road * * * for title to that portion of lot 1 that my building occupied.”
The allegations of the appellee’s bill and his testimony force us to hold that the chancellor was in error in decreeing that the description in the two deeds in question should include lots 1 and 2 of block 18.
There remains for our solution the problem of providing directions by which the *85 chancellor shall be governed and guided when the cause shall be remanded.
The appellee’s right to a proper reformation of the deeds in question is clearly-shown by the evidence; but there is no evi-dentiary basis for setting forth in a decree any reformed description by which the boundary lines of a specific tract or parcel may be identified and established with precision and certainty, because of the conflicting and confusing evidence as to the location of the Edge store building. There is nevertheless clear and ample evidence on which a proper and adequate decree of reformation may be predicated.
As we have seen, the Bayou Fish Company, prior to its conveyance of May 16, 1939 to Mildred Plew Meigs, had conveyed to the Gulf Power Company a part of block 18. The land conveyed to the power company was accurately described by metes and bounds, and is readily identifiable. The undisputed testimony of C. F. Lear, who was one of the surviving directors and trustees of the Bayou Fish Company by whom the deed to Mildred Plew Meigs was executed in behalf of the dissolved corporation, and the testimony of the appellee, show that, by the execution" of such deed, it was intended that there should be conveyed to the grantee all the remaining land in block 18 which at the time of the conveyance was owned by the grantor corporation.
It is our view that a decree can and ought to be entered by which the deed of May 16, 1939, from the Bayou Fish Company to Mildred Plew Meigs shall be so reformed that the property conveyed shall be described as all land in block 18 as shown and designated on Plat No. 5 of Valparaiso (Niceville) on file in the office of the Clerk of the Circuit Court of Okaloosa County, Florida, which was owned by the grantor at the time of the delivery of such deed; and by which the deed of May 26, 1939, from Mildred Plew Meigs and Clifford Meigs, her husband, to the appellee, Claude G. Meigs, shall be so reformed that the property conveyed shall be described as all land in such block 18 which was owned by the Bayou Fish Company at the time of the delivery by such corporation of the deed of May 16, 1939, from such corporation to Mildred Plew Meigs. It is our further view that the reformation of such descriptions should relate back to the delivery of such deeds and that they should be given the same effect as would be given them had the reformed descriptions been set forth therein at the time of their delivery.
Assuming (but without deciding) that the court below has the jurisdictional power to determine in the equity suit the issues which are or may be involved in he ejectment action, it is our opinion that, because of the conflicting and confusing evidence and other peculiar circumstances reflected by the record, such issues can best be determined in the ejectment action and that, therefore, the further prosecution of such action should not be permanently enjoined. If the ejectment action had not been instituted prior to the commencement of the equity suit it would not have been necessary to join as defendants in the equity suit the plaintiffs in the ejectment action. They were joined, and properly so, because to enable him to defend in the ejectment action his claimed title and right of possession the appellee desired and needed a stay of the proceedings in such action until he should obtain a reformation of deeds which were vital to his defense. On the entry of an appropriate decree by which such reformation shall be effected such necessity will have been dissipated and the question as to which of the contesting parties has the paramount title and right of possession can be fairly determined in the ejectment action.
The decree appealed from is reversed and the court below is directed to enter, on the remand of the cause, an appropriate final decree which shall be consistant with our opinion and decision.
ROBERTS, C. J., and TERRELL and MATHEWS, JJ., concur.