431 So.2d 641 (1983)
CLEARWATER KEY ASSOCIATION-SOUTH BEACH, INC., a Florida Not-for-Profit Corporation, Appellant,
v.
Claude THACKER and Catherine P. Thacker, Appellees.
No. 82-1266.
District Court of Appeal of Florida, Second District.
April 20, 1983.
Rehearing Denied May 23, 1983.
*642 Peter T. Roman and Peter Dunbar of Dunbar, Dunbar, Roman, Anderson & Schafer, P.A., Dunedin, and James W. Hagan of Fowler, White, Gillen, Boggs, Villareal & Banker, Clearwater, for appellant.
C. Scott Brainard of Schrader, Englander & Schacter, P.A., Largo, for appellees.
HOBSON, Judge.
Clearwater Key Association-South Beach, Inc. (hereinafter the "Association"), a non-profit Florida corporation which operates the Sand Key Condominium-South Beach I, appeals a final summary judgment order which, inter alia, reformed a paragraph of the Declaration of Condominium dealing with common expenses, as requested by Claude and Catherine Thacker (hereinafter the "Thackers"), joint owners of two contiguous and interconnected condominium units, and discharged the Association's *643 claim of lien against their units for unpaid assessments. We reverse.
Sand Key Condominium-South Beach I is a 96-unit residential condominium located in Clearwater. It was developed by United States Steel Corporation (hereinafter the "developer") in the early 1970's. In March 1972 the Thackers purchased Unit 409 of the condominium from the developer. They also purchased contiguous and interconnected Unit 408 from the developer in February 1973. At the time of the sale of Unit 408, the developer's sales staff orally represented to them that they would be liable for only one monthly management fee by virtue of their earlier purchase of contiguous and interconnected Unit 409. Also, the sales contract for Unit 408 specified that
[t]his purchase of Apartment 408 in conjunction with the previous purchase of Apartment 409 ... constitutes a double-unit purchase which qualifies for one monthly management fee under the provisions of XIV.B-Management Agreement ... SAND KEY CONDOMINIUM-SOUTH BEACH I Condominium documents.
The Declaration of Condominium was drafted pursuant to the developer's direction. It was executed on July 2, 1973. The condominium's original management agreement, entered into on July 19, 1973, by the Association and Beach Management Company, not incorporated (hereinafter "BMC"), was attached to the Declaration and recorded with it in the Public Records of Pinellas County. Paragraph XIII of the agreement set forth a schedule of monthly management fees for the condominium units. It specifically indicated that Units 408 and 409 were the only units liable together for only one monthly management fee. Moreover, as mentioned in the sales contract for Unit 408, paragraph XIV provided in pertinent part:
XIV.
Ownership of Two Units by
Apartment Owner:
Notwithstanding anything hereinabove contained, it is expressly understood and agreed that where an apartment owner owns two units contiguous and interconnected to one another then and in that event only one monthly management fee shall be paid... .
The original provisions of the Declaration of Condominium pertaining to assessments for the condominium units did not reflect the language in paragraphs XIII and XIV of the original management agreement, the representations of the developer's sales staff made at the time of the sale of Unit 408, or the relevant language in the Unit 408 sales contract. Paragraph VII of the Declaration listed in fractions each unit's percentage of ownership interest in the common elements. The fractions assigned to Units 408 and 409 were 1.0416 and 1.0417, respectively. The fractions assigned to all 96 units totalled 100.0000. In other words, the percentage of ownership interest in the common elements for all 96 units equalled 100%. Meanwhile, paragraph VIII stated in full:
VIII.
Common Expenses and Common Surplus
Each unit owner shall share that percentage of the common expenses, and own that percentage of the common surplus, as designated in paragraph VII above.
Paragraph XIII specified in material part:
XIII.
Assessments
Section 1. Common expenses, including those required under any management contract, shall be assessed against each condominium parcel owner by the Association as provided in paragraphs VII and VIII hereof.
In 1978 the Association and BMC terminated the original management agreement without the complete approval of the unit owners. Paragraph XVII of the original management agreement had stated that the agreement could be terminated by mutual consent of the Association and BMC at any time without the approval of the unit owners *644 and that the covenants contained therein would bind the unit owners only during the term of the agreement.
Thereafter, various management companies rendered services for the condominium under different agreements, none of which provided that owners of two contiguous and interconnected units would be liable for only one monthly management fee.
In 1979, the Association, relying on paragraphs VII, VIII and XIII of the Declaration of Condominium, demanded for the first time that the Thackers pay a monthly maintenance fee for each of their two units. The Thackers, however, steadfastly refused to pay two fees. Thus, the Association filed a claim of lien against their units in 1980 for unpaid assessments. See § 718.116(4)(a), Fla. Stat. (1977). The Thackers subsequently filed a complaint against the Association, the developer and BMC seeking, inter alia, reformation of the Declaration of Condominium and cancellation and removal of the Association's claim of lien. They later filed a notice of voluntary dismissal as to the developer and BMC.
After the consolidation of both cases, each party moved for summary judgment. The court's final order cancelled and removed the Association's claim of lien, reformed the Declaration of Condominium by adding the language from paragraph XIV of the original management agreement to the language of paragraph VIII of the Declaration, and awarded the Thackers their court costs and attorney fee. As reformed, paragraph VIII reads in relevant part:
VIII
Common Expenses and Common Surplus
Each unit owner shall share that percentage of the common expenses, and own that percentage of the common surplus, as designated in paragraph VII above. Provided, however, notwithstanding anything hereinabove contained, and while the percentage of common surplus shall remain unchanged, it is expressly understood and agreed that where a unit owner owns two units contiguous and interconnected to one another then and in that event only one monthly maintenance fee shall be charged that unit owner....
On appeal, the Association, noting that the original management agreement provided that the agreement could be terminated at any time and that the covenants mentioned therein would run with the land only during the term of the agreement, asserts that the Thackers' "right" to pay only one monthly management fee expired when the Association and BMC terminated the agreement in 1978. The Thackers, however, citing section 718.302(1)(a), Florida Statutes (1977), contend that the decision of whether to terminate a management agreement made by an association prior to assumption of control of the association by unit owners other than the developer[1] rests solely with unit owners other than the developer, not the association's board of directors. Section 718.302(1)(a) reads in relevant part:
718.302 Agreements Entered into by the Association. 
(1) Any grant or reservation made by a declaration, lease, or other document, and any contract made by an association prior to assumption of control of the association by unit owners other than the developer, that provides for operation, maintenance, or management of a condominium association or property serving the unit owners of a condominium shall be fair and reasonable, and may be canceled by unit owners other than the developer:
(a) If the association operates only one condominium and the unit owners other than the developer have assumed control of the association, or if unit owners other than the developer own not less than 75 percent of the units in the condominium, the cancellation shall be by concurrence *645 of the owners of not less than 75 percent of the units other than the units owned by the developer. .. . (Emphasis added)
We believe that the Thackers' interpretation of section 718.302(1)(a) is unrealistic in light of the fact that the Association, through its Board of Directors, is vested with the power under other relevant statutes and pertinent by-laws of the condominium to deal with matters relating to management of the condominium.
Section 718.111(4), Florida Statutes (1977), provides in whole:
The powers and duties of the association include those set forth in this section and those set forth in the declaration and bylaws, if not inconsistent with this chapter.
Sections 718.111(1) and (2) read in pertinent part:
(1) The operation of the condominium shall be by the association... .
(2) The association may contract... . [T]he powers of the association include, but are not limited to, the maintenance, management, and operation of the condominium property.
Sections 718.112(1) and (2)(a) state:
(1) The administration of the association and the operation of the condominium property shall be governed by bylaws... .
(2) The bylaws shall provide for the ... following:
(a) The form of administration of the association shall be described, indicating the title of the officers and board of administration and specifying the powers... .
The bylaws of the Sand Key Condominium-South Beach I provide in relevant part:
IV.
Administration
Section 1.
a. Number and Qualification. The affairs of the Association shall be governed by a Board of Directors... .
Section 2. Powers and Duties. The Board of Directors shall have the powers and duties necessary for the administration of the affairs of the Association... .
Section 3. Management Agent. The Board of Directors may employ for the Association a management agent . .. to perform such duties, services and powers as the Board shall authorize... .
In sum, section 718.302(1)(a) does not preclude the board of administration of an association from terminating such a management agreement. It simply provides a procedure by which unit owners other than the developer "may" take it upon themselves to terminate such an agreement. We gather that they might readily pursue such a method where the board of directors of an association refuses or neglects to terminate such an agreement.
Next, the Thackers argue that they were third-party beneficiaries to the original management agreement. Specifically, they point out that paragraph XIII of the agreement indicated that Units 408 and 409 were liable for only one monthly management fee. Also, they note that paragraph XIV of the agreement allowed owners of two contiguous and interconnected units to qualify for only one monthly fee. Thus, they assert that the Association could not terminate the agreement without their approval. However, despite the fact that they alleged in their complaint that they were third-party beneficiaries, the trial court did not so find. In any event, the agreement was not made directly and primarily for the benefit of owners of Units 408 and 409; as such, the Thackers were mere incidental beneficiaries, not intended beneficiaries. See American Surety Co. of New York v. Smith, 100 Fla. 1012, 130 So. 440 (1930). In Florida, an incidental beneficiary cannot sue on a contract. Id.; Bryant v. Cole, 282 So.2d 652 (Fla. 2d DCA 1973).
Alternatively, the Thackers maintain that their "right" to pay only one monthly management fee arose independent of the original management agreement by virtue of the language in the sales contract for Unit 408 and the representations of the developer's sales staff. But neither the Association nor any other unit *646 owners were parties to these dealings. Hence, the Association and the other unit owners are not controlled by them.
The Thackers, proceeding one step further, point out that Arthur Borgh, the initial project manager for the developer, testified in an uncontradicted affidavit that "if the [condominium] documents ... do not clearly set forth the Developer's intention that its purchasers of two contiguous and interconnected condominium units should only pay one management fee, the documents are mistaken as to the Developer's intention." Accepting the premise that the court below found that there was clear and convincing evidence that the developer made a genuine mistake in failing to include within the Declaration a provision reflecting that the owners of contiguous and interconnected units were to qualify for only one management fee, it is necessary to examine the propriety of the court's reformation.
Generally speaking, a court of equity has the power to reform an instrument to correct a draftsman's mistake. However, we hold that a court of equity is without power to reform an instrument because of a draftsman's mistake where the instrument, as reformed, would conflict in a material way with provisions of a controlling statute. In this case, paragraph VIII of the Declaration, as reformed, materially conflicts with sections 718.104(4), 718.115(2), and 718.116(8), Florida Statutes (1977). Every condominium declaration in Florida is subject to these provisions. See § 718.102, Fla. Stat. (1977).
Section 718.104(4) states in relevant part:
718.104 Creation of condominiums; contents of declaration. 
... .
(4) The declaration must contain or provide for the following matters:
... .
(f) The undivided share in the common elements appurtenant to each unit stated as percentages or fractions, which, in the aggregate, must equal the whole.
(g) The proportions or percentages of and manner of the sharing common expenses and owning common surpluses, which, for a residential condominium, must be the same as the undivided shares in the common elements.

... . (Emphasis added)
Section 718.115(2) reads in full:
718.115 Common expenses and common surplus. 
... .
(2) Funds for the payment of common expenses shall be collected by assessments against unit owners in the proportions or percentages provided in the declaration. In a residential condominium, unit owners' shares of common expenses shall be in the same proportions as their ownership interest in the common elements. (Emphasis added)
As mentioned previously, paragraph VII of the Declaration provided that the undivided fractional shares in the common elements appurtenant to Units 408 and 409 were, respectively, 1.0416 and 1.0417. As reformed, paragraph VIII conflicts with sections 718.104(4)(g) and 718.115(2) because the manner of sharing common expenses is no longer the same as the undivided shares in the common elements. The Thackers' share of common expenses is now less than their ownership interest in the common elements.
Section 718.116(8) provides in whole:
718.116 Assessments; liability; lien and priority; interest; collection. 
... .
(8) No unit owner may be excused from the payment of his share of the common expense of a condominium unless all unit owners are likewise proportionately excused from payment... .
Paragraph VIII, as reformed, violates section 718.116(8) because its effect is to excuse the Thackers from the payment of their share of common expenses without proportionately excusing the other unit owners.
We therefore conclude that the reformation of paragraph VIII of the Declaration of Condominium is invalid.
*647 Lastly, the Thackers, noting that the Association did not begin charging them two monthly management fees until 1979, six years after the Declaration of Condominium took effect, maintain that the Association is barred by waiver or the doctrine of estoppel from assessing them with two fees. However, as the Association points out, they failed to raise this issue below. Hence, they are precluded from raising it on appeal.
Accordingly, the decision below is reversed in all respects.[2]
REVERSED.
OTT, C.J., and LEHAN, J., concur.
NOTES
[1] Were it not for the fact that the Association does not argue otherwise, we would question whether section 718.302(1)(a) is even applicable here since, based upon the facts before us, it appears that the original management agreement was executed after assumption of control of the condominium by unit owners other than the developer.
[2] It would appear at first blush that the Thackers' only avenue of recourse would be against the developer for misrepresentation. However, as noted previously, they voluntarily dismissed their complaint against the developer prior to the rendition of the final summary judgment order.