507 So.2d 1366 (1987)
PROVIDENCE SQUARE ASSOCIATION, INC., Petitioner,
v.
Connie BIANCARDI, Respondent.
No. 68304.
Supreme Court of Florida.
April 23, 1987.
Rehearing Denied June 29, 1987.
*1368 Harlan L. Paul of James, Zimmerman & Paul, DeLand, for petitioner.
Michael S. May, DeLand, for respondent.
PER CURIAM.
We have for review Biancardi v. Providence Square Association, Inc., 481 So.2d 1272 (Fla. 5th DCA 1986), which expressly and directly conflicts with decisions of another district court of appeal on the same *1369 question of law.[1] We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution. The issue in this case is whether a court may award the equitable remedy of reformation to change the percentages of ownership interests in the common elements of a condominium as set forth in the condominium declaration. We hold that it may and that reformation is proper in this case. We, therefore, quash the district court's decision.
As initially constructed, the Providence Square office condominium consisted of four identical units. One of these units was later divided in half so that when subjected to the condominium form of ownership there were three units of equal size (units one, two, and three) and two units (units four and five) half the size of the larger three. The declaration of condominium, however, provided that each of the five units would have an equal twenty-percent ownership share in the common elements. Connie Biancardi purchased units four and five, one on January 31, 1984 and the other on March 19, 1984. On April 6, 1984, a fire completely destroyed the office building comprising the Providence Square condominium.
Biancardi filed an action for declaratory judgment, seeking a determination that, as forty-percent owner of the common elements and common surplus, she would be entitled to receive forty percent of the net insurance proceeds. The condominium association filed a counterclaim seeking reformation of the condominium declaration. The trial court found that the developer and the purchasers of the condominium parcels intended each unit to carry a percentage share of ownership of the common elements proportionate to its size. Accordingly, the parties understood that units one, two, and three each carried a twenty-five percent ownership share in the common elements while units four and five each carried a twelve and one-half percent ownership share in the common elements. The court found that the declaration provision indicating equal twenty-percent shares for all five units was a drafting mistake. The court reformed the document to express the arrangement it found the parties to have intended.
The district court of appeal reversed, ruling that the declaration of condominium, being a unilaterally created document, could only be amended in accordance with the proper statutory prerequisites. Noting that the developer sold the units according to the terms of the declaration and the related documents and that Biancardi had paid the appropriate amount reflected in those documents, the district court concluded that any fault lay with the declaration's original draftsman and that the court had no authority to alter the document's terms.
A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument. Blumberg v. American Fire & Casualty Co., 51 So.2d 182 (Fla. 1951); Rosenthal v. First National Fire Insurance Co., 74 Fla. 371, 77 So. 92 (1917); Phenix Insurance Co. v. Hilliard, 59 Fla. 590, 52 So. 799 (1910); Malt v. R.J. Mueller Enterprises, Inc., 396 So.2d 1174 (Fla. 4th DCA 1981); Gennaro v. Leeper, 313 So.2d 70 (Fla. 2d DCA 1975). This principle is applicable to instruments of conveyance of real property as well as to contracts and can be applied to correct an erroneous land description in order to protect a person's rights in real property. Crompton v. Kirkland, 157 Fla. 89, 24 So.2d 902 (1946); Shell Creek Land Co. v. Watson, 101 Fla. 172, 133 So. 621 (1931); Horne v. J.C. Turner Cypress Lumber Co., 55 Fla. 690, 45 So. 1016 (1908); Herring v. Fitts, 43 Fla. 54, 30 So. 804 (1901); General Development Corp. v. Kirk, 251 So.2d 284 (Fla. 2d DCA 1971); Goodstone v. Shamblen, 141 So.2d 8 (Fla. 2d DCA 1962). Notably, *1370 in reforming a written instrument, an equity court in no way alters the agreement of the parties. Instead, the reformation only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached. Porter v. Meigs, 74 So.2d 82 (Fla. 1954); Southern Lead Corp. v. Glass, 103 Fla. 657, 138 So. 59 (1931); Smith v. Caravasios, 96 Fla. 219, 118 So. 10 (1928).
We cannot agree with the district court's ruling that a declaration of condominium, being a unilaterally created document, is not subject to reformation on the ground of mutual mistake. Clearly, reformation principles cannot be applied to certain kinds of unilaterally generated legal documents which are noncontractual in nature. For example, a city council resolution expressing the city's intentions is not subject to reformation because, due to its unilateral nature, such a resolution simply cannot give rise to a mutual mistake. Carr v. City of Kissimmee, 80 Fla. 759, 86 So. 699 (1920). Additionally, where a deed is given gratuitously and thereby constitutes a unilateral act on the part of the grantor, or where the only consideration is "love and affection" rather than material value, equity will not decree reformation on the ground of mistake. Smith v. Pattishall, 129 Fla. 498, 176 So. 568 (1937); Triesback v. Tyler, 62 Fla. 580, 56 So. 947 (1911); Harrod v. Simmons, 143 So.2d 717 (Fla. 2d DCA 1962). On the other hand, a deed given pursuant to valuable consideration is normally the result of some degree of bargaining and is, therefore, bilateral in character. Whether there is an antecedent formal written contract of sale or merely an oral negotiation leading up to the execution of the deed, the provisions in the deed, such as covenants, conditions, restrictions and reservations, as well as the description of the land conveyed, are expressions of the agreement reached by the parties through the antecedent negotiations. Such a bilateral instrument is subject to reformation where the need arises.
Unlike either municipal resolutions or nongratuitous deeds, declarations of condominium have both unilateral and bilateral elements. When a declaration of condominium is initially filed for recording, it is unilateral in nature. Later, when condominium parcels are sold, each conveyance is made pursuant to and with reference to the declaration. Thus, to the extent that a declaration forms a part of the deed of conveyance and is based on the contractual agreement between the seller and the purchaser, it is a bilateral instrument as to which there can be a mutual mistake. In a sense, a declaration of condominium is analogous to a subdivision plat. The declaration sets the legal ground rules for a controlled process of subdivision, development, sale, and use of the individual parcels of real property pursuant to a general plan. See Bank of South Jacksonville v. Cammar, 89 Fla. 296, 103 So. 827 (1925); Lawyers Title Guaranty Fund v. Milgo Electronics, 318 So.2d 416 (Fla. 3d DCA 1975), cert. denied, 336 So.2d 602 (Fla. 1976); § 718.104(7), Fla. Stat. (1984 Supp.) (declaration provisions are equitable servitudes that run with the land). Therefore, the provisions in the instant declaration of condominium pertaining to each unit's proportionate share of the common elements formed an integral part of each transaction between the developer and the condominium unit purchasers.
The district court concluded that only an amendment filed in accordance with the condominium statutes could change the terms of the declaration. Seeking to bolster the district court's decision, Biancardi argues that the extensive statutory regulation of condominium developments in Florida mandates that any amendments to declarations strictly follow statutory procedures. A close examination of the relevant condominium statutes, however, reveals that they fail to provide an adequate remedy in situations where an original declaration is erroneously drafted.[2] Notably, the statutory amendment of a declaration *1371 is very different from the equitable reformation thereof. A reformation relates back to the time the instrument was originally executed and simply corrects the document's language to read as it should have read all along. Porter, 74 So.2d at 85. By contrast, an amendment that changes the provisions of a document prospectively does not provide a determination that, as originally written, it contained an erroneously drafted provision.
Section 718.110(1)(a), Florida Statutes (Supp. 1984), provides that, in the absence of a method of amendment set forth in the declaration, a declaration may be amended by approval of "the owners of not less than two-thirds of the units" except as to matters described in subsections (4) and (8). Subsection (4) states that, unless provided in the declaration,
no amendment may ... materially alter or modify the appurtenances to [any] unit, or change the proportion or percentage by which the owner of the parcel shares the common expenses and owns the common surplus unless the record owner of the unit ... join[s] in the execution of the amendment.
§ 718.110(4), Fla. Stat. (Supp. 1984). As written and recorded, the declaration provided that units four and five each had a twenty-percent share. The object of the amendment would be to reduce those shares to twelve and one-half percent. Thus, the declaration could not be amended under subsection (4) without Biancardi's consent.
Although subsections (5), (9), and (10) of section 718.110, Florida Statutes (Supp. 1984), provide for the correction of errors in a declaration, none provides a remedy applicable to the instant dilemma. Subsection (5) only applies to situations where, due to a scrivener's error, the sum total of the percentage shares of ownership assigned to the units in the declaration fails to equal one hundred percent. The declaration in the present case mistakenly designated each of the five units as having a twenty-percent share. Thus subsection (5) is inapplicable. Subsection (9) only authorizes declaration amendments that will materially affect the property rights of the unit owners if the unit owners consent in writing. Because this mechanism would require Biancardi's consent, it is realistically unavailable to the condominium association. Lastly, subsection (10) provides the circuit court with jurisdiction to correct errors or omissions in a declaration or other necessary document that affect the valid existence of the condominium. Because the mistake in the instant declaration does not call into question the legal validity of the condominium itself, subsection (10) is inapplicable as well. Thus, it is clear that none of the statutory provisions for amendment apply to the instant situation or provide an adequate alternative remedy.
The district court declined to look beyond the condominium documents for the intent of the parties regarding the property interests to be conveyed. Indeed, the general rule in actions at law based on contracts and other written instruments is that ordinarily the writing itself must stand as the only exposition of the parties' intent. In a reformation action in equity, however, parol evidence is admissible for the purpose of demonstrating that the true intent of the parties was something other than that expressed in the written instrument. Spear v. McDonald, 67 So.2d 630 (Fla. 1953); Biggs v. Biggs, 452 So.2d 129 (Fla. 2d DCA 1984); Rowland v. Whitehead, 375 So.2d 607 (Fla. 2d DCA 1979). Similarly, the doctrine of merger in deed, under which preliminary understandings, negotiations, and agreements regarding a conveyance are held to merge in the deed leaving it as the sole expositor of the parties' intent, is inapplicable in an action seeking the equitable remedy of reformation. Southpointe Development, Inc. v. Cruikshank, 484 So.2d 1361 (Fla. 2d DCA), review denied, 492 So.2d 1330 (Fla. 1986). Therefore, we conclude that the trial court acted properly by allowing parol evidence concerning the declaration's failure to express the true intentions of the parties.
Biancardi next argues that, as a matter of law, the trial court's findings of fact did not justify the conclusion of mutual mistake. We disagree and find the trial *1372 court's finding of mutual mistake to be correct. A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument. Blumberg, 51 So.2d at 184. Because the developer, Biancardi, and the other unit purchasers understood that the respective percentage ownership shares in the common elements were to be twenty-five percent each for units one, two, and three, and twelve and one-half percent each for units four and five, the declaration's provision of equal twenty-percent shares for all five units was clearly a mutual mistake.[3]
Finally, Biancardi contends that the evidence did not support the trial court's findings of fact. In support of its finding that all parties involved knew Biancardi's two units each had a twelve and one-half percent ownership share and were, therefore, mistaken about the terms expressed in the declaration, the trial court made extensive findings concerning the ongoing relationship between the unit owners. We view the trial court's findings concerning the financial obligations carried by the respective parties to be of particular significance. Specifically, the monthly maintenance collection, common expenses, insurance premiums, ad valorem taxes, and other expenses associated with the Providence Square Association for units four and five combined equaled the expenses of the owners of units one, two, and three separately. Biancardi argues that her knowledge of the taxes, expenses, and assessments she was required to pay does not demonstrate that the declaration's provisions concerning ownership shares was a mistake because it was not shown that she knew what amounts the other unit owners were paying. Evidence was presented, however, to show that she was aware of the ratio of financial responsibilities among the several unit owners. Moreover, a condominium purchaser is charged with notice not only of the record documents, but also of the physical configuration of the buildings constituting the condominium. Beach Place Joint Venture v. Beach Place Condominium Association, Inc., 458 So.2d 439, 441 (Fla. 2d DCA 1984).
In an equitable action for reformation of a written instrument, the chancellor's findings of fact are entitled to a presumption of correctness. Though the evidence may be subject to varying interpretations, the chancellor's judgment resolving the evidentiary conflicts will not be disturbed on appeal unless it is shown to be clearly erroneous. Tatum v. City Building & Loan Association, 76 Fla. 258, 260, 79 So. 839, 839 (1918); Baldwin v. Christopher, 75 Fla. 605, 615, 79 So. 339, 342 (1918); Rosenthal, 74 Fla. at 381, 77 So. at 94. See also Hopping v. Lovejoy, 53 So.2d 704, 704 (Fla. 1951) (chancellor should accept master's findings of facts showing entitlement to reformation, where supported by evidence). We find the trial court's findings and judgment amply supported by legally sufficient evidence.
Accordingly, we quash the decision of the district court and remand for proceedings consistent with this opinion.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH and BARKETT, JJ., concur.
SHAW, J., and ADKINS, J. (Ret.), dissent.
NOTES
[1] See Beach Place Joint Venture v. Beach Place Condominium Ass'n, Inc., 458 So.2d 439 (Fla. 2d DCA 1984) (affirming reformation of condominium documents); Clearwater Key Association-South Beach, Inc. v. Thacker, 431 So.2d 641 (Fla. 2d DCA), review dismissed, 438 So.2d 834 (Fla. 1983) (stating that reformation of condominium declaration is available in a proper case).
[2] The statute makes no reference to any procedure to be followed in Tallahassee. Amendments to declarations, like original filings thereof, are made by recording in the public records of the county where the land is located. §§ 718.104(2), 718.110(3), Fla. Stat. (1985).
[3] Even if, as Biancardi suggests, there was no mutual mistake because she knew the declaration gave units four and five each a twenty-percent share, there would still be grounds under the evidence for a decree of reformation. Reformation is proper when there is a mistake on the part of one side of the transaction, and inequitable conduct on the part of the other side. See, e.g., Hopkins v. Mills, 116 Fla. 550, 156 So. 532 (1934).