689 So.2d 1277 (1997)
Kimberly C. KRUEGER, n/k/a Kimberly Weiny, Appellant,
v.
Charles Piper KRUEGER, III, Appellee.
No. 96-00824.
District Court of Appeal of Florida, Second District.
March 21, 1997.
*1278 Suzanne D. Lanier of Richman, Deifik, Lanier & Ross, P.A., Naples, for Appellant.
Charles Piper Krueger, III, pro se.
CAMPBELL, Judge.
Appellant/Mother challenges the trial court order that modified appellee/Father's child support obligation downward based on Father's decision to attend law school. Mother maintains that Father did not meet his heavy burden of showing a substantial change in circumstances that is significant, material, involuntary and permanent. See Burdack v. Burdack, 371 So.2d 528 (Fla. 2d DCA 1979). The issue here, whether a parent may choose to attend law school and thereby reduce his or her available income, is currently before the Florida Supreme Court. Overbey v. Overbey, 683 So.2d 484 (Fla. Oct.29, 1996) (Overbey II). We affirm, but certify conflict with Overbey v. Overbey, 674 So.2d 898 (Fla. 5th DCA 1996) (Overbey I).
This now forty-five-year-old father had been a pharmacist for his entire career. Under the 1990 Final Judgment of Dissolution and Settlement Agreement, Mother was awarded custody of the two minor children, then ages two and six. Father was ordered to pay $650 per month per child in child support (a total of $1,300 per month). Five years later, Father filed for a downward modification of his child support because a buyer had defaulted on a real estate sale, thus reducing Father's available income, and because Father anticipated a further reduction due to his decision to attend law school for three years, during which time he intended to work only part-time. Over objection, Father testified at trial that one of the reasons he wished to change his career from pharmacy to law was that he had leg varicosities that were aggravated by the long periods of standing that were required of him as a pharmacist, and that over the years, his leg disorder had been worsening, leading him to believe that he would be forced to take an early retirement if he did not change careers. The trial court granted Father's motion for modification, ordering a downward modification of child support for the two children from $1,300 per month to $650 per month for a two-and-one-half year period. After that two-and-one-half-year period, the monthly child support payments would return to the original $1,300.
Mother maintains that the court erred in ordering the downward modification and in not imputing income to Father because, she argues, Father's decision to attend law school was voluntary and thus does not meet the required standard that the substantial change in circumstances be significant, material, and involuntary. See Burdack.
The specific issue here, whether a parent's decision to seek further education in order to affect a career change, thereby reducing that parent's income, is voluntary, has caused a split between the Third District and the Fifth District. Milligan v. Addison, 582 So.2d 769 (Fla. 3d DCA 1991); Overbey I. The Florida Supreme Court has accepted jurisdiction. Overbey II. The Third District in Milligan concluded that the father's decision to "better himself financially in the future by attending law school for three years... cannot be considered a voluntary reduction in income sufficient to impute income to him for child support purposes based on his past earnings history because this decision will ultimately benefit his child." 582 So.2d at 770. The Fifth District in Overbey I reached the opposite conclusion, holding that the "decision to attend law school, however well-intentioned, was a voluntary one that cannot take precedence over the welfare of the two minor children herein concerned...." 674 So.2d at 899. The Overbey I court certified conflict with Milligan, and the supreme court has accepted the case.
We agree with the reasoning in Milligan and conclude that the trial court was correct in reducing Father's child support obligation for two-and-one-half years while he attends law school. There are two reasons for our conclusion. First, the oldest child of the parties is now twelve. Even if Father has not yet begun attending law school, and begins in the fall of 1997, the oldest child will only be fifteen-and-one-half at the end of the two-and-one-half-year period, and will still be able to benefit from Father's reinstated child support and increased income.
*1279 Second, Father here had a medical reason to change careers which distinguishes this case from those in which the supporting parent simply chooses, because it has always been his or her dream, to change careers. Although the court here did not make specific findings regarding Father's health, there is testimony in the record, albeit admitted over objection, indicating that Father's leg varicosities have been worsening and that he will be forced to take an early retirement if he does not change his career to one that does not require long hours of standing. In that respect, we conclude that Father's career change is not voluntary, but is involuntarily required by his health. We therefore conclude that Father has met his burden and we, accordingly, affirm the trial court's downward modification of child support and its concomitant refusal to impute income to Father during the two-and-one-half-year period during which Father attends law school and works part-time.
Mother also argues that the court improperly failed to consider Father's assets. While it is permissible for the court to consider assets, the court may also consider whether any particular asset is a fixed asset or a liquid asset. Father here testified that his assets are not liquid, and are in the form of real estate that he has, to date, been unable to sell. That being the case, the court could well have determined that it was fruitless to consider those assets in making a child support determination. We find no error here since the court's result was supported by the record.
Mother also argues that the court should have reserved jurisdiction to consider fees while Father maintains that, by its terms, the Settlement Agreement prohibits either party from collecting attorney's fees. Our review of the Settlement Agreement leads us to conclude that it is silent on the issue of attorney's fees in a modification proceeding. Four provisions of the Settlement Agreement are involved. Article V of the Settlement Agreement, entitled "Waiver of Attorney's Fees," reads: "The Husband agrees to pay his own attorney's fees and court costs incurred by this action. The Wife agrees to pay her own attorneys' fees and costs incurred in this action." The Settlement Agreement also has a provision entitled, "Enforcement Expenses," which reads:
If either the Husband or the Wife defaults in the performance of any of the obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate performance of any provision of this Agreement, then in such case, the party found to be in default shall pay all expenses, including reasonable attorney's fees incurred in connection with such enforcement proceedings.
The section entitled, "Subsequent Dissolution of Marriage," states in subsection (A): "In any such action, each party, provided the other is not in default under this Agreement, shall make no claim for alimony, suit money, support for the children, or attorney's fees except in accordance with the provisions of this Agreement." Finally, in the section of the agreement entitled, "Representations," subsection (E) states: "Each party is aware of the law of Florida with respect to the power of the Court under certain conditions to modify the terms of this Agreement, particularly with reference to matters of child custody and support."
Since the first three provisions do not address attorney's fees in a modification proceeding despite the parties' specific mention of the possibility of subsequent modification, we conclude that the agreement itself is silent on the issue of attorney's fees in subsequent modification proceedings. Given the fact that the parties stipulated to the reservation of attorney's fees and the fact that the court stated that it intended to reserve the issue of fees for a later hearing, we conclude that the court erred in failing to reserve jurisdiction to consider attorney's fees, and remand to allow the court to consider the fee issue.
Accordingly, we affirm the order temporarily modifying child support and, in that regard, we certify conflict with Overbey I. On remand, on motion of either party, the trial court shall conduct a hearing on the issue of attorney's fees in accord with the stipulation of the parties and the court's oral pronouncement.
*1280 DANAHY, A.C.J., and SCHOONOVER, J., concur.