709 So.2d 583 (1998)
Holly Daw KARTZMARK, Appellant,
v.
Martin KARTZMARK, Appellee.
No. 96-4000.
District Court of Appeal of Florida, Fourth District.
April 1, 1998.
*584 Cynthia L. Greene of Law Offices of Cynthia L. Greene, P.A. and Ira L. Dubitsky of Law Offices of Ira L. Dubitsky, P.A., Miami, for appellant.
Robert H. Springer and Catherine Mazzullo of Springer & Springer, Palm Springs, for appellee.
RAMIREZ, JUAN, Jr., Associate Judge.
The former wife, Holly Daw Kartzmark (hereafter "wife"), filed a petition for reformation, enforcement, and modification of a 1992 marital settlement agreement incorporated into a final judgment of dissolution of marriage. She also sought an upward modification of alimony. The former husband, Martin Kartzmark (hereafter "husband"), also filed a counter-petition for reformation, and a request for termination of alimony. The issues confronting the trial court essentially involved a marital settlement agreement that was incomplete, poorly drafted, and orally modified by the parties at the time of its execution.[1] We affirm in part and reverse in part.
The parties were married in 1961 and remained married for 26 years until they separated in December 1987. They lived separately for the next five years when the husband initiated divorce proceedings, requesting enforcement of a settlement agreement entered into between the parties on September 28, 1992. The agreement was drafted by an attorney at the request of the husband. It provided for the division of property, including a provision that the husband was to retain sole ownership in thirteen limited partnerships. As "rehabilitative alimony," the agreement provided that "[t]he Husband shall pay to the Wife the sum of five hundred dollars ($500.00) monthly until Wife remarries, beginning on the first day of the month following the entering of a Final Judgment of Dissolution of Marriage."
*585 The wife's petition for reformation alleged that in order to procure her signature on the settlement agreement, the husband promised to pay her an additional $500 per month for a total of $1,000 per month in alimony. She sought reformation of the agreement retroactive to its execution on September 28, 1992, to reflect alimony of $1,000. She also sought to compel the payment of arrearages in his alimony obligations and an upward modification of alimony. The modification was based on her allegations that in January 1995, she had lost her job and, since then, had been unable to obtain suitable employment. Further, the wife alleged that the husband had interests in other limited partnerships acquired prior to the parties' separation.
The husband counter-petitioned for reformation, enforcement, and modification alleging that he orally agreed to pay her an additional $500 per month only as long as his income was sufficient. He claimed that he was under the mistaken belief that he could deduct both sums in his tax return and that the wife would have to declare them as income. He admitted he paid her $1,000 per month until September 1993 when he realized that he could not deduct the additional $500 from his tax return.
He further alleged that the parties agreed that the wife would receive a one-half ownership interest in the various partnerships and interests owned by him and that she would share equally in the income earned and the expenses incurred. He sought reformation of the agreement to reflect the correct alimony obligations and the ownership interests in the various partnerships and to enforce the wife's obligation for payment of expenses associated with the partnerships. He also sought a termination of rehabilitative alimony claiming that she had been unemployed by her own choice and that his income had diminished.
After conducting a hearing, the trial court correctly concluded that the $1,000 per month, although labelled rehabilitative alimony in the agreement, was really permanent periodic alimony. The court also correctly denied a termination or downward modification of this alimony. However, the judge erred in not awarding this alimony retroactively. The court also erred in awarding the wife a one-half interest in the limited partnerships owned by the husband prior to December 31,1987, and in assessing against her any losses sustained by those limited partnerships. We also reverse the denial of an increase in alimony.

I. ALIMONY
"A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument." Providence Square Ass'n v. Biancardi, 507 So.2d 1366, 1369 (Fla.1987); see Alvarez v. Garcia, 662 So.2d 1312, 1314 (Fla. 3d DCA 1995). The theory of reformation on grounds of mistake is to reform the agreement to reflect what the parties would have agreed to had there been no mistake. Mills v. Mills, 339 So.2d 681, 684 (Fla. 1st DCA 1976). "A reformation relates back to the time the instrument was originally executed and simply corrects the document's language to read as it should have read all along." Providence Square, 507 So.2d at 1371; see Porter v. Meigs, 74 So.2d 82, 85 (Fla.1954).
Generally, a unilateral mistake is not a ground for reformation. See Mills, 339 So.2d at 684 (husband was not entitled to reformation of settlement agreement under the mistaken belief that his wife had a debilitating cardiac condition); Nordberg v. Green, 638 So.2d 91 (Fla. 3d DCA 1994) (in the absence of fraud or imposition, equity will not relieve a party for that party's own mistake due to negligence and lack of foresight).[2] In this case, it was undisputed that the husband unilaterally reduced the additional $500 payment when he learned that he could not deduct this additional payment. *586 But, he never discussed the tax implications of the alimony payments with his wife. At trial, the husband's accountant testified that if the court reformed the agreement to reflect the $1,000 alimony payment, the payment would be deductible in the future, but that it was unlikely that reformation would permit the husband retroactively to obtain a deduction for prior payments. By not awarding the arrearages in alimony, the trial court was basically reforming the agreement on the basis of the husband's unilateral mistake. Thus, we find that the trial court abused its discretion in failing to reform the settlement agreement retroactively and effectively wiping out the arrearages in alimony of approximately $19,000.

II. LIMITED PARTNERSHIPS
The thirteen limited partnerships specifically enumerated in the agreement were not the only limited partnerships owned by the husband. The partnerships listed in the agreement were only those acquired by him after the parties separated in 1987. The partnerships owned by the husband prior to 1987 were the subject of yet another oral agreement. It was undisputed that those partnerships predating their separation would be jointly owned. However, the husband was unable to transfer title to those limited partnerships because it was against corporate policy and against the terms of the limited partnership. In fact, the partnership agreements specifically required that the partner-employee "buy out" the interest of his or her spouse within sixty days of a dissolution of marriage. The husband did not buy out his wife, but continued to retain the partnership interests in his name only and took no legal steps to ensure that the parties' verbal agreement was carried out. As fate would have it, immediately after the dissolution of the parties' marriage, the limited partnerships, for the first time ever, began to cost money instead of earn money.
The trial court awarded to each of the parties a one-half interest in all the limited partnerships owned by the husband prior to December 31, 1987, and assessed one-half of the losses to the wife. The court did not explain how this was to be accomplished. Logically, before a court of equity can reform an instrument, the reformation must create an enforceable obligation. If the parties had no power to make such a contract in the first place, the court cannot make it for them. See 9 Fla. Jur.2d Cancellation, Reformation and Rescission of Instrument s § 56 (1997); 66 Am.Jur.2d Reformation of Instruments § 7 (1973); Board of Pub. Instruction v. Union Sch. Furnishing Co., 100 Fla. 326,129 So. 824 (1930) (reformation of notes which the board could not under the constitution validly execute would be refused; nor could the legislature make them valid and binding); Clearwater Key Assoc.-South Beach, Inc. v. Thacker, 431 So.2d 641, 646 (Fla. 2d DCA 1983) ("[A] court of equity is without power to reform an instrument because of a draftsman's mistake where the instrument, as reformed, would conflict in a material way with provisions of a controlling statute."); Hedges v. Dixon County, 150 U.S. 182, 192, 14 S.Ct. 71, 74, 37 L.Ed. 1044 (1893) ("Where a contract is void at law for want of power to make it, a court of equity has no jurisdiction to enforce such contract...."); Strong v. Powell, 247 Miss. 55, 150 So.2d 516, 519 (1963) ("A bill to reform presupposes that you have something that can be reformed. A void deed of trust being an absolute nullity constitutes, as we see it, nothing to be reformed.").
Under the terms of the partnership agreements, the husband was obligated to buy out the wife long before these partnerships started incurring losses. Additionally, an owner of property has the option of selling an asset that is generating losses. The wife did not have this option as she neither owned nor could own the asset. Accordingly, the trial court erred in awarding the wife a one-half interest in the limited partnerships owned by the former husband prior to December 21, 1987, and in assessing against her any losses sustained by those partnerships.

III. MODIFICATION OF ALIMONY
We conclude that the trial court abused its discretion in denying the wife's petition for an increase in alimony. She demonstrated a substantial and material change in circumstances in that at the time of the entry of final judgment, she was employed *587 by a construction company by virtue of her degree in construction management and was earning $36,000.[3] She has since lost her job and has been unable to obtain another position in that field in over two years. She had to move in with her daughter in Texas where she helps with the grandchildren and the housekeeping because she was unable to provide for herself.[4]
It is clear from the record that there has been a substantial change in circumstances, that change was not contemplated at the time of the final judgment and is permanent in nature in that more than one year has elapsed. See Freeman v. Freeman, 615 So.2d 225 (Fla. 5th DCA 1993) (a showing of a substantial change in circumstances for one year or more constitutes a change of sufficient permanence to grant relief).

IV. ATTORNEY'S FEES, SUIT MONEY AND COSTS
Finally, the trial court erred in holding that each party shall pay their own attorney's fees and costs. The parties had agreed that the court reserve jurisdiction on attorney's fees until a later date. However, the court determined entitlement without ever conducting a subsequent hearing. See Krueger v. Krueger, 689 So.2d 1277, 1279 (Fla. 2d DCA 1997) ("[G]iven the fact that the parties stipulated to the reservation of attorney's fees and the fact that the court stated that it intended to reserve the issue of fees for a later hearing, we conclude that the court erred in failing to reserve jurisdiction to consider attorney's fees, and remand to allow the court to consider the fee issue."). Further, the trial court failed to take into consideration the relative financial resources of the parties. See Fla. Stat. § 61.16 (1995); Rosen v. Rosen, 696 So.2d 697, 700 (Fla. 1997).

V. CONCLUSION
Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED for further proceedings.
GUNTHER and SHAHOOD, JJ., concur.
NOTES
[1] None of the attorneys involved in this appeal participated in drafting the agreement.
[2] The courts have also held that reformation is proper where there is unilateral mistake on one side of the transaction, and inequitable conduct on the other. Providence Square, 507 So.2d at 1372 n. 3; Ayers v. Thompson, 536 So.2d 1151, 1154 (Fla. 1st DCA 1988); see also Smith v. Royal Automotive Group, Inc., 675 So.2d 144, 150 (Fla. 5th DCA 1996). If there was any inequitable conduct surrounding the agreement, it emanated from the husband, not the wife.
[3] The husband, who himself earns $100,000 a year as a contractor, admitted that he would rather hire a man than a woman because of certain perceptions in the construction industry.
[4] As to the other employment options considered by the trial court, the wife no longer possesses the certification necessary as an instructor of grounds school in aviation. Her former employment as a bank teller over thirty years ago is hardly relevant. She does not own a boat to be a "boat captain," nor does she possess the certification necessary to be a nanny/governess. At any rate, she should not have to become a housekeeper simply because she has been forced to care for her grandchildren.