955 So.2d 604 (2007)
Mark BANKS and Debbie Banks, etc, et al., Appellants,
v.
ORLANDO REGIONAL HEALTHCARE, etc., et al., Appellees.
No. 5D05-4253.
District Court of Appeal of Florida, Fifth District.
April 5, 2007.
*605 Joseph H. Williams, of Troutman, Williams, Irvin, Green Helms & Polich, P.A., Winter Park, for Appellants.
Michael R. D'Lugo and Richards H. Ford, of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Orlando, for Appellees, Orlando Regional Healthcare System, Inc.
Craig S. Foels and Robin D. Black of Hannah, Estes & Ingram, P.A., Orlando, for Appellees, Franklin, Levy and Medical Center Radiology Group.
PLEUS, C.J.
Mark and Debbie Banks appeal a partial summary final judgment extinguishing their individual claims for loss of filial consortium and other expenses in a medical malpractice action related to their minor daughter. Because we conclude that the Banks' claims were not transferred to the initial tortfeasors, we reverse and remand for further proceedings.

Facts
On February 29, 2000, the Banks family  Mark, Debbie and their two young daughters, Paige and Payton  were vacationing in Florida from England when they were involved in an automobile accident. As they were driving on Florida's Turnpike, an oncoming car, driven by Bernard Guyette, crossed the median and struck the Banks' car head-on. All four of the Banks were seriously injured. They received care at various Central Florida hospitals until March 16, when they were all medically transported back to England for further hospital care.
Guyette and his insurer, Allianz Insurance Company, agreed to settle for his policy limits of $1,000,000 Canadian. Because two of the injured Banks were minors, the parents petitioned the probate court for approval of the settlement. On October 17, 2000, the probate court entered an Order on Petition for Approval of Settlement, which approved the distribution of proceeds among the Banks. The final paragraph of that order stated:
6. That Debbie Banks and Mark Banks, individually, and on behalf of Paige Banks and Payton Banks, their minor children, have permission to execute a Release and Settlement Agreement, releasing all claims against Bernard Guyette and Allianz Insurance Company, in relation to any injuries sustained in the automobile accident which occurred on February 29, 2000.
Subsequently, the Banks signed an Affidavit and Release of All Claims ("original release"), which released Guyette and Allianz from liability "on account of, or in any way growing out of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, property damage and consequences thereof, resulting or to result from a certain incident which occurred on or about February 29, 2000. . . ." The release was silent regarding claims against any subsequent health care providers. The release was not dated, but on *606 November 20, 2000, the Banks' settlement check was deposited.
On May 22, 2002, the Banks, individually, and as natural guardians of Payton, sued Orlando Regional Healthcare System, Inc., Nemours Children's Clinic, and Dr. Marc Levy (collectively referred to as "ORHS"). They later amended the complaint to include Dr. Joe Franklin, Dr. David Davis and the Medical Center Radiology Group (collectively referred to as "the radiologists"). A second amended complaint was filed rearranging the complaint into seven counts. The first six counts alleged medical negligence against the various defendants on behalf of Payton Banks. Count VII asserted a claim on behalf of the parents, individually, for loss of filial consortium and other expenses.
In May 2003, ORHS filed a motion for summary judgment arguing that the plaintiffs had failed to reserve any potential causes of action against subsequent tortfeasors in their release of the initial tortfeasor. The radiologists later joined in this motion.
In response, the Banks filed various documents in opposition to the motion for summary judgment, including an Amended Affidavit and Release of All Claims against Guyette and Allianz. This document expressly reserved any claims against the subsequent healthcare providers. They also filed an Amended Order on Petition for Approval of Settlement. That order stated, in pertinent part:
1. The Court approved the settlement, but did not approve the "Affidavit and Release of All Claims", as required by law, which was apparently, executed by MARK BANKS and DEBBIE BANKS, as it was not presented to the Court for approval.
2. The Court would not have approved a settlement or authorized a release which actually released, or implied the release, of any other potential negligent persons or entities, given the significant damages sustained by PAYTON BANKS.
The order further approved the amended release and acknowledged that it did not release the subsequent medical providers. It also found that:
5. Further, the settlement of the minors' claims, including the "Amended Affidavit and Release of All Claims", did not grant or transfer a right of subrogation against the above referenced medical providers to [Guyette and Allianz].
6. It is clear from this Court's prior order that the parents, on behalf of their minor children did not have permission to release any claims against any other parties except [Guyette and Allianz] and only in relation to any injuries sustained in the automobile accident which occurred on February 29, 2000.
After hearing argument, the lower court denied summary judgment, stating:
Basically, had that release been attached and approved by the Court, Mr. Ford, you'd be in just fine, but I find that the parents exceeded the authority given by that court order in light of the fact that the release was not attached. And therefore, the validity of the release definitely is questioned. I know you're here just on a motion for summary judgment, that is your factual dispute. If I had to make my call, I'd say it's invalid for being beyond the purview of the court order dealing with the minor settlement.
Subsequently, ORHS filed a Motion for Clarification and/or Motion for Entry of Partial Summary Judgment. It argued that based on the court's finding that the parents had exceeded their authority in releasing potential claims for Payton, summary judgment was still appropriate as to *607 the parents' individual claims. The radiologists joined in this motion. After hearing arguments, the court granted summary judgment as to Count VII, the Banks' individual claims for loss of filial consortium and medical expenses. The Banks timely appealed this order.

Discussion
On appeal, the issue before us is whether the lower court erred in granting summary judgment against the Banks. We review this issue de novo. Rice v. Greene, 941 So.2d 1230 (Fla. 5th DCA 2006).
All parties to this appeal assert that our decision in Rucks v. Pushman, 541 So.2d 673 (Fla. 5th DCA 1989), controls its resolution. In that case, Rucks was injured by Pushman at a bar owned by Gailey. Rucks was taken to the hospital where she was allegedly injured further by her treating doctors. Id. at 674. She sued Pushman, Gailey, the hospital and the doctors. After Rucks settled her claims against Pushman and Gailey, the hospital and the doctors filed motions for summary judgment alleging that her releases of the initial tortfeasor were without qualification and represented a full settlement against all defendants. Id. Rucks filed a motion to reform the release with Gailey to show they did not intend to release subsequent tortfeasors. The trial court did not rule on this motion. Instead, it granted summary judgment in favor of the subsequent tortfeasors based on McCutcheon v. Hertz Corp., 463 So.2d 1226 (Fla. 4th DCA), rev. denied, 476 So.2d 674 (Fla.1985).
This Court affirmed the summary judgment. We reasoned that because an initial tortfeasor is generally liable for injuries caused by a subsequent tortfeasor, any release of an initial tortfeasor aiming to address only the injuries caused by the initial tort should be should be "carefully accomplished so that it is clear that the victim is not receiving compensation from the initial tortfeasor for injuries resulting from the subsequent negligence of the health care providers and that the victim is reserving the victim's cause of action against the health care providers." Id. at 675. When the release is unclear as to the subsequent tortfeasors:
[T]he rule is that if the victim's settlement agreement with, and release of, the initial tortfeasor does not clearly reserve to the victim the victim's cause of action against the health care providers, the legal presumption is that the victim recovered from the initial tortfeasor for the injuries caused by the health care providers and the initial tortfeasor will become subrogated to that cause of action and the victim will be thereafter barred from asserting that cause of action against the health care providers.
Id. at 676.
However, we added the following procedural caveat:
While the summary judgment in this case is procedurally correct, if in truth and in fact the true settlement agreement between the victim and the initial tortfeasor was intended by those parties thereto to be only a settlement of the victim's injuries resulting from the initial tortfeasor and was not intended to compensate the victim for injuries resulting from the negligence of the health care providers, and should not in law or in equity result in a transfer to the initial tortfeasor of the victim's cause of action against the health care providers, the victim should, in justice and fairness and law, be given an opportunity to establish that fact. However, consistent with the trial court's decision, we hold that the victim's motion to reform made in this law action for the recovery of damages was inadequate for that purpose. The cause of action, if any, the victim may *608 have against the initial tortfeasor to reform the victim's release should be asserted in a separate equitable reformation action. If, because of its form, the victim's release has resulted in an unintended assignment of rights by operation of law, we know of no reason why the initial tortfeasor cannot merely reassign those rights to the victim by a properly drawn legal document or, if there is a controversy as to the intent of those parties, why the victim cannot resolve that controversy in a separate equitable action against the initial tortfeasor for reformation and, when equitable relief has been obtained, assert such cause of action against the health care providers. This opinion is not intended to preclude such action by the victim if appropriate and desired and otherwise possible. We realize, of course, that matters such as the statute of limitations may thwart the victim in this particular case.
Id. at 676 (emphasis added).
Consistent with Rucks, we believe the probate court in the instant case successfully reformed the original release to reflect the parties' intent not to release subsequent tortfeasors or transfer any causes of action against subsequent tortfeasors. That reformation related back to the date of the original release. As our supreme court explained in Providence Square Ass'n, Inc. v. Biancardi, 507 So.2d 1366, 1369-71 (Fla.1987):
A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument. . . . Notably, in reforming a written instrument, an equity court in no way alters the agreement of the parties. Instead, the reformation only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached.
. . . .
. . . A reformation relates back to the time the instrument was originally executed and simply corrects the document's language to read as it should have read all along. By contrast, an amendment that changes the provisions of a document prospectively does not provide a determination that, as originally written, it contained an erroneously drafted provision.
(Citations omitted). The fact that the original release was undated does not trouble us because it was executed well before the initiation of the medical malpractice action on May 22, 2002.
ORHS attacks the reformation action on the ground that it was an "interested person" that should have been afforded notice and an opportunity to be heard in such action. Had it been afforded due process, it asserts it would have designated the proceeding adversarial and moved to block the reformation as untimely under Florida Rule of Civil Procedure 1.540. We reject this argument because ORHS was not an "interested person" as defined by section 731.201(21), Florida Statutes (2003). That section expressly states that the meaning of the term "interested person" may "vary from time to time and must be determined according to the particular purpose of, and matter involved in, any proceedings." § 731.201(21), Fla. Stat. (2003). The purpose of the guardianship proceeding in this case was to obtain court approval of a settlement involving minors. ORHS and the other defendants in the malpractice action were not parties to the settlement and had no standing to participate in the approval process. Any interest they had in the outcome of the settlement proceedings *609 was at best tangential to the intended purpose of those proceedings.
Based on the above analysis, we conclude that any "unintended assignment" of the Banks' claims against the instant defendants was cured by reformation of the release, such that this claim was not transferred to the initial tortfeasors. What remains is whether the statute of limitations had run by the time the Banks filed their claim on May 22, 2002. As that issue was not raised or addressed below, we express no opinion about it. Instead, we reverse the summary judgment and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON and ORFINGER, JJ., concur.