578 So.2d 441 (1991)
NATIONAL AMERICAN INSURANCE CO., a Foreign Corporation Doing Business in Florida, Appellant/Cross-Appellee,
v.
William BAXLEY, Sr., by and through His Son, Legal Guardian and Next Friend, William BAXLEY, Jr., Appellee/Cross-Appellant.
No. 90-2343.
District Court of Appeal of Florida, First District.
April 18, 1991.
*442 Joanna A. Mauer of Haas, Boehm, Brown, Rigdon & Seacrest, P.A., Tallahassee, for appellant.
Robert J. Mayes of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for appellee.
JOANOS, Judge.
National American Insurance Co. (NAIC) has appealed from final summary judgment entered on behalf of appellee Baxley, awarding him $900,000 in uninsured motorist coverage. Baxley has cross-appealed an order of the trial court finding that NAIC did not breach its statutory duty to notify Baxley annually of his options regarding uninsured motorist coverage. We affirm.
William Baxley, Sr. had insurance coverage for his towing business with CIGNA, which coverage was scheduled to expire at 12:01 A.M. on November 5, 1988. The CIGNA policy covered each of three business vehicles with $20,000 in uninsured motorist benefits, and $300,000 in bodily injury benefits. It was undisputed that, based on CIGNA's failure to obtain an election from Baxley regarding the "stacking" of this coverage, Baxley would be entitled to receive, for a covered incident, $60,000 in uninsured motorist benefits, and $900,000 in bodily injury benefits.
In May 1988, CIGNA notified Baxley's insurance agent, Donato, that it would not renew any towing business policy. On November 2, 1988, Donato sent Baxley a price quote from NAIC for coverage identical in type and amount to that provided by CIGNA. Approximately 125 policyholders were affected by CIGNA's action. Given the paperwork involved, Donato anticipated that, for some of them, NAIC coverage would not be in place when CIGNA coverage expired. He therefore received permission from NAIC to "backdate" policies to the CIGNA expiration date, simply by telephoning NAIC and requesting it. Donato requested backdating as to many of the affected policies, but did not do so when, *443 two days after the expiration of Baxley's CIGNA policy, he received Baxley's NAIC application and check. Rather, he testified that he deliberately bound Baxley's NAIC coverage effective November 7, 1988.
In February 1989, three months after the NAIC coverage became effective, Baxley was rendered comatose in a one-car automobile accident; the driver was underinsured. Baxley's guardian thereafter sought a declaration that Baxley had $900,000 in uninsured motorist coverage under the NAIC policy, based on Lumberman's Mutual Casualty Co. v. Beaver, 355 So.2d 441 (Fla. 4th DCA 1978). That case held that, if an insurance company fails to procure an insured's rejection of uninsured motorist coverage, the insured is entitled to such coverage in the same amount as the bodily injury limits. Lumberman's at 444. It was undisputed that NAIC never procured such a rejection from Baxley.
However, section 627.727(1), Florida Statutes (1987), provides that "[w]hen the named insured ... has initially selected limits of uninsured motorist coverage lower than his bodily injury liability limits, higher limits of uninsured motorist coverage need not be provided in ... any other policy which ... replaces an existing policy with the same bodily injury limits unless the insured requests higher uninsured motorist coverage in writing" (emphasis supplied). NAIC argued that, because its policy "replaced" the CIGNA policy, in which an election of uninsured motorist coverage had been made, it was not required to obtain a new election.
Baxley responded that, because the CIGNA policy had expired on November 5, 1988, 48 hours before the NAIC policy became effective on November 7, 1988, the NAIC policy did not replace "an existing policy" within section 627.727(1). Therefore, Lumberman's operated to entitle him to uninsured motorist coverage equal to the $900,000 bodily injury coverage. Baxley thereafter moved for partial summary judgment on this issue. The trial court adopted his argument and granted the motion, finding that NAIC had been required to obtain a rejection of uninsured motorist coverage from Baxley.
The trial court also denied NAIC's motion for reformation of the policy based on mutual mistake. NAIC argued that the intent of the parties was that the policy be effective November 5, 1988, but that Donato had dated it November 7 because of a "mistaken" belief that he could not backdate Baxley's NAIC coverage. The trial court found that Donato had not indicated a November 7, 1988 effective date inadvertently, as required for a finding of mutual mistake, but rather had done so deliberately. A final judgment was thereafter entered in Baxley's behalf, awarding him $900,000 in uninsured motorist coverage under the NAIC policy.
Terms in a statute which are unambiguous need no interpretation. Shelby Mutual Insurance Co. v. Smith, 556 So.2d 393 (Fla. 1990). Section 627.727(1) unambiguously provides that "[w]hen the named insured ... has initially selected limits of uninsured motorist coverage lower than his bodily injury liability limits, higher limits of uninsured motorist coverage need not be provided in ... any other policy which ... replaces an existing policy with the same bodily injury limits unless the insured requests higher uninsured motorist coverage in writing" (emphasis supplied).
Assuming arguendo that this provision applies to a replacement policy issued by a different insurer, when NAIC assumed coverage of Baxley's business, no "existing policy" was replaced. It was undisputed that, from 12:01 A.M., November 5, 1988, until 12:01 A.M., November 7, 1988, Baxley was entirely without insurance coverage. We cannot agree with NAIC's argument that this gap was irrelevant based on the parties' intent that coverage be continuous. Had Baxley's accident occurred during the 48-hour hiatus period before the NAIC policy became effective, NAIC would have afforded him no coverage. NAIC also urges various interpretations of "existing policy" favorable to its position, but none are consistent with the plain meaning correctly applied by the trial court.
*444 We therefore find that the trial court correctly held that the NAIC policy did not replace "an existing policy" within the meaning of section 627.727(1), and therefore that NAIC was obligated to obtain a rejection of uninsured motorist coverage from Baxley. Because it did not do so, the trial court did not err in finding that, under Lumberman's, appellee Baxley is entitled to uninsured motorist coverage under the NAIC policy equal to bodily injury limits of $900,000.
We briefly address NAIC's additional argument that the trial court erred in denying its motion to reform the NAIC policy to reflect a November 5, 1988 effective date. Courts of equity have the power to reform written instruments where, due to mutual mistake, the instrument as drawn does not accurately reflect or express the true intent of the parties. Providence Square Assn., Inc. v. Biancardi, 507 So.2d 1366, 1369 (Fla. 1987). A mistake is mutual when the parties agree to one thing, but due to a scrivener's error or inadvertence express something different in the written instrument. Biancardi at 1372 (emphasis supplied).
It is clear from the record that Donato's use of November 7, 1988 as the effective date of the NAIC policy was neither a scrivener's error, nor inadvertent. Donato deliberately altered the effective date from that originally discussed with Baxley, and Baxley was made aware of the change and did not object. The trial court therefore did not err in denying reformation. We find that appellee's allegation of error on cross-appeal is also without merit and warrants no further discussion.
Affirmed on all issues.
ERVIN and MINER, JJ., concur.