**AMERICAN ANNUITY GROUP, INC., et al., Plaintiffs,**

v.

**GUARANTY REASSURANCE, CORPORATION, Defendant.**

No. C–1–95–454.

United States District Court, S.D. Ohio, Western Division.

April 18, 2001.

James Eugene Burke, Daniel E. Izenson, Paul D. Dorger, Keating Muething & Klekamp, Cincinnati, OH, for American Annuity Group Inc., Great American Life Insurance Company, plaintiffs.

Kenneth Joseph Schneider, Wood & Lamping, David Alan Caldwell, Eric Carl Holzapfel, Wood & Lamping, Cincinnati, OH, for Guaranty Reassurance Corporation, defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiffs' Combined Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, Motion to Strike, and Motion for Judgment on the Pleadings, and a Memorandum in Support of Judgment (doc. 52); Defendant's Response (doc. 55); Plaintiffs' Reply (doc. 56); Defendant's

Motion to Extend the Discovery Deadline (doc. 59) and Plaintiffs' Response (doc. 60). In addition, the Court held a Hearing in this matter on June 18, 2001 (doc. 57).

## BACKGROUND

### A. *Introduction*

This case arises out of a Stock Purchase Agreement (the "Agreement") between Plaintiffs American Annuity Group, Inc. and Great American Life Insurance Company (hereinafter, collectively referred to as either "Plaintiffs" or "GALIC") and Defendant Guaranty Reassurance Corporation (hereinafter, collectively referred to as either "Defendant" or "GRC") (*see* doc. 1).

In late 1994, GALIC agreed to purchase the stock of Western Pacific Life Insurance Company (hereinafter, referred to as "Western Pacific") from GRC (*Id.*). After the deal was closed, a disagreement arose over the interpretation of certain price provisions in the Purchase Agreement (*Id.*). Plaintiffs claim that GRC breached the contract by improperly refusing to reduce the purchase price under the Price Adjustment Clause of the Agreement (*Id.*). Plaintiffs filed suit in federal court seeking to be awarded for the contractual adjustment in the purchase price.

### B. *Factual and Procedural Histories*

The following factual and procedural histories are taken directly from the Sixth Circuit's decision in the case of *American Annuity Group, Inc. v. Guaranty Reassurance Corp.*, 211 F.3d 1268, No. 98–4337, 2000 WL 572021, at *1–3 (6th Cir. May 5, 2000) (unpublished opinion):

The defendant, Guaranty Reassurance Corporation (GRC), is a Florida corporation based in Jacksonville which operates troubled insurance companies on behalf of state guaranty associations, managing their asset portfolios until the

policies and assets can be sold to another life insurance company. In March 1994, GRC began managing the assets of the Western Pacific Life Insurance Company, a California life insurance company. Western had been in conservatorship under the supervision of the California Department of Insurance since August 1991. Although Western had never been insolvent, it had been placed in conservatorship because of the insolvency of its parent corporation, the Guaranty Security Life Insurance Corporation.

In April 1994, GRC conducted a nationwide direct mail solicitation in an effort to find a high bidder for the stock of Western. To prepare Western for sale, GRC purchased all of Western's "below investment grade" securities, and placed its entire asset portfolio in low-yield Treasury securities. Western necessarily absorbed certain losses associated with this change, intended to allow the prospective purchaser easily to reinvest Western's assets in accordance with its own risk, yield, and diversity needs, thus reducing Western's capital and surplus for valuation purposes.

In May 1994, the plaintiffs, American Annuity Group, Inc., and its wholly owned subsidiary, Great American Life Insurance Company, (collectively GALIC), requested a bid package and performed a preliminary due diligence assessment of Western. The bid package included an audited annual financial statement for 1993, disclosing, among other things, that no "cash flow testing" had been done with regard to Western's assets, and that, therefore, no "cash flow testing reserve" had been established; this had not been required while Western was in conservatorship.

GALIC was among several companies submitting bids for Western. GALIC's bid, the highest, was accepted in July 1994, subject to further due diligence

and the signing of a purchase agreement. On September 19, 1994, GALIC and GRC executed a Stock Purchase Agreement for the acquisition of Western by GALIC. The agreement used the following formula to calculate the purchase price:

*1.2 Purchase Price; Payment.* The aggregate purchase price ("Purchase Price") for the Shares shall be an amount equal to the sum of (i) $540,000 and (ii) the capital and surplus of Western determined as of the Closing Date (as defined in Section 1.3) in accordance with Section 1.4. . . .

*1.4 Capital and Surplus.* The amount of capital and surplus of Western, for purposes of calculating the Purchase Price under Section 1.2 shall be Western's capital and surplus (including its Asset Valuation Reserve and Interest Maintenance Reserve) as stated on *Western's regularly prepared statutory accounting statements.*

On December 12, 1994, the California Department of Insurance granted approval for the acquisition, contingent upon GALIC contributing $500,000 to Western's capital, which it did. The transaction closed on December 30, 1994.

Immediately before closing, because "Western's regularly prepared statutory financial statements" "determined . . . as of the Closing Date" were not available, the parties entered into an Agreement as to Post Closing Adjustment. Under the terms of this agreement, GALIC would pay an estimated purchase price calculated on the basis of Western's September 30, 1994, financial statement, which price would be adjusted later when a purchase price based on "Western's regularly prepared statutory financial statements as of December 31, 1994, prepared by Western," became avail-

able. Both parties knew at this time that the September 30 financials, upon which the estimated price would be based, did not provide any cash flow test reserve.

Including $50,000 earnest money already paid, the estimated purchase price paid on December 30 totaled $6,102,842.

On January 9, 1995, GALIC and GRC entered into an agreement whereby GRC would prepare Western's year-end statement for 1994. This statement, prepared in the same manner as the previous statements GRC had prepared for Western during the period of its conservatorship, revealed that GALIC was entitled to a $144,412 reduction in the purchase price, representing expenses incurred in excess of income received between September 30 and December 31, 1994.

GALIC then prepared its own version of the financial statement, adding a cash flow testing reserve of $1,500,000. This reduced Western's capital and surplus by $1,500,000, and thus also the purchase price by a like amount. This move would also have brought the value of Western below a cut-off value specified by California's regulatory agency, so the new statement also included an asset of the same value, described as a "receivable" from GALIC-that is, the $1,500,000 claim GALIC felt it had against GRC for a purchase price refund.

Subsequently GALIC's actuary consulted an outside auditor concerning the size of the cash reserve required, and modified the size of the reserve to $1,200,000. The $1,500,000 receivable was left unchanged.

Based upon these numbers, GALIC calculated that it was owed $1,359,412 as a purchase price reduction, plus interest on that amount from December 30, 1994, at the rate of 8.5%. After unsuccessfully demanding that GRC voluntarily remit the funds, GALIC brought suit against GRC on May 18, 1995, to recover that amount. On June 14, 1995, GRC removed the case to the United States District Court. The parties agree that their agreement is governed by Florida law, as provided in the choice of law provision of the September 19, 1994, Stock Purchase Agreement.

The district court found that the term "regularly prepared statutory financial statements," while facially unambiguous, contained a *latent* ambiguity-whether those statements were to include a cash flow testing reserve. The district court acknowledged that GALIC, responsible as of December 30 to prepare the year-end statement, was required by California law to perform cash flow testing. However, the court noted that GRC, which had operated Western during the previous nine months, had *not* been required to perform cash flow testing because Western had been in conservatorship, and that therefore a valuation reflecting cash flow testing "provided an inaccurate picture of Western Pacific's financial strength."

On October 8, 1998, the district court entered judgment in GALIC's favor. However, the court awarded GALIC only $109,412 plus interest at the annual rate of 8.5%, rather than the $1,359,412 it sought. The district court resolved the latent ambiguity that it found in the phrase "regularly prepared statutory financial statements" in favor of GRC, finding that it had not been the intent of the parties to base Western's purchase price on a calculation using cash flow testing.

*American Annuity Group*, 2000 WL 572021, at *1–3 (emphasis in the original).

## C. *The Sixth Circuit Court of Appeals*

GALIC appealed this Court's judgment in their favor and award of only $109,412 plus interest at the annual rate of 8.5%, rather than the $1,359,412 plus interest that Plaintiffs had originally sought, to the Sixth Circuit Court of Appeals (*see* doc. 42). GALIC advanced three arguments to support its appeal of this Court's damages award decision to the Sixth Circuit: "(1) that the district court erred in failing to account for plaintiffs' earnest money payment in its final award of damages; (2) that the district court erred in finding that the purchase price formula in the Agreement as to the Post–Closing Adjustment contained a latent ambiguity; and (3) that assuming the purchase price formula to be ambiguous, the district court nonetheless erred in construing it against GALIC" (doc. 47). *American Annuity Group*, 2000 WL 572021, at *3.

Since the Sixth Circuit agreed with Plaintiffs' first two arguments, it did not address the third point raised by Plaintiffs on appeal. In its finding in favor of Plaintiffs, the Court of Appeals first held that, "[b]ecause the record makes plain that the district court's finding of fact was clearly erroneous ..., we conclude that GALIC has not yet received and is entitled to credit for the $50,000 earnest money payment." *Id.* Secondly, the Court of Appeals held that, "the definition of latent ambiguity cited by GRC is not consistent with the long-standing and clearly established Florida law stating that, in the absence of ambiguous terms, a reviewing court must not consider extrinsic evidence in interpreting a contract.... Because the price provision contained no ambiguity on its face, we hold that the district court's resort to extrinsic evidence of the parties' intent to interpret the provision was improper." *American Annuity Group*, 2000 WL 572021, at 5 (internal citations omitted).

The Sixth Circuit the affirmed the Court's liability judgment in favor of Plaintiffs, but vacated this Court's award of damages in this matter. *Id.* at *6.

## D. *Post–Appellate History*

After the Sixth Circuit's decision was reviewed, this Court held a status conference with the Parties to this matter (doc. 48). During the conference, Defendant GRC moved this Court for leave to file a Second Amended Answer and Counterclaim in order to reform the contract. GRC informed the Court that it believed the last paragraph of the Sixth Circuit's holding in the appellate review of this case merited reopening the case for the purpose of reforming the contract in question. The Sixth Circuit stated, in pertinent part:

> However, these holdings are not the end of our analysis of the parties' dispute. GRC has presented evidence to the effect that it was not the intention of the parties at the time they entered into the purchase agreement to include cash flow testing in the calculation of Western's purchase price. We have declined to examine this evidence in the contest of a so-called "latent ambiguity" inquiry, because, as we have said, we do not believe the contract contained a latent ambiguity. However, because Florida, like most common law jurisdictions, allows for reformation of contracts in cases of mutual mistake or unilateral mistake of which the other party has knowledge or suspicion, *see Florida Masters Packing, Inc. v. Craig*, 739 So.2d 1288, 1290 (Fla.Dist. Ct.App.1999), and without at all suggesting that we think those concepts are necessarily material, we deem it appropriate to remand this case for reconsideration by the district court to determine whether either of these equitable doctrines, or any other, are applicable.

*American Annuity Group*, 2000 WL 572021, at *6 (doc. 47). The Court of Appeals remanded the matter to this

Court for our consideration of Defendant's assertions of equitable doctrines, in general, and the doctrine of mistake, in particular. *Id.*

In light of the Sixth Circuit's remand of this matter, this Court granted Defendant leave to file a Second Amended Answer and Counterclaim, as well as issued a new Scheduling Order in this action (doc. 49). On November 1, 2000, Defendant filed its Answer and Counterclaim (*see* doc. 50). This was followed by Plaintiffs' Combined Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, Motion to Strike, and Motion for Judgment on the Pleadings, and Memorandum in Support of Judgment (hereinafter, collectively referred to and shall be reviewed by this Court as "Plaintiffs' Motion for Summary Judgment") (doc. 52). Shortly thereafter, Defendant filed its Response (doc. 55), followed by Plaintiffs' Reply (doc. 56).

In addition, the Court held a Hearing in this matter on January 18, 2001 (doc. 57). This matter is now ripe for the Court's determination.

### E. *The Court's Holding*

After reviewing this matter, the Court finds Plaintiffs' arguments in support of its Motion for Summary Judgment to be well-taken, and is, therefore, GRANTED (doc. 52). *See* Fed.R.Civ.P. 56. *Sun-Bank/North Florida Nat'l Ass'n,* 683 So.2d 1189, 1190 (Fla.Dist.Ct.App.1996) ("He who asks for the remedy of [reformation of an instrument] must make an equitable showing. If his case is weak on its equity, reformation will be denied. If his equity is met by an equity of equal dignity, the parties will be left to exercise their strict legal rights. If his equity is not met by opposing equities, the Court will have less hesitation in granting the relief asked.").

In addition, the Court hereby STRIKES Defendant's newly raised "Affirmative Defenses" pleaded in GRC's Second Amended Answer and Counterclaim (doc. 50). *See* Fed.R.Civ.P. 12(f). Therefore, the Court DIRECTS the Clerk of this Court to: (1) make an ENTRY of Judgment in favor of Plaintiffs, (2) AWARD Plaintiffs their damages in the amount of one million, three-hundred and fifty-nine thousand, four-hundred and twelve dollars ($1,359,-412.00), plus interest at the annual rate of eight and one-half percent (8.5% annum) from December 30, 1994, until payment in full is made by Defendant and received by Plaintiffs; and (3) TERMINATE this action from this Court's active docket.

Having found in favor of Plaintiffs' Motion for Summary Judgment (doc. 52), this Court hereby DENIES Defendant's Motion to Extend the Discovery Deadline as being without merit or, in the alternative, as MOOT (doc. 59). Finally, the Final Pretrial Conference and Trial on the merits that were previously scheduled in the Court's September 15, 2000 Scheduling Order, is hereby VACATED (docs. 49 & 61).

### STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue

of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir. 1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

### A. *Reformation of Contracts Under Florida Law*

Reformation is an equitable remedy. The doctrine was summarized by the Florida Supreme Court as follows:

Where an agreement has been actually entered into, but the contract, deed, or other instrument in its written form does not express what was really intended by the parties thereto, equity has jurisdiction to reform the written instrument so as to conform to the intention, agreement, and understanding of all the parties.

*Jacobs v. Parodi,* 50 Fla. 541, 39 So. 833, 837 (1905).

Thus, "Florida courts have consistently held that where a mistaken writing is the product of the parties' mutual mistake, or unilateral mistake on the part of one party and inequitable conduct by the other, the writing should be reformed to accurately reflect the parties' agreement." *Florida Masters Packing, Inc. v. Craig,* 739 So.2d 1288, 1290 (Fla.Dist.Ct.App.1999) (holding that parent tract transferees were bona fide purchasers without notice, and, thus, outparcel deed was not subject to reformation); *see also Smith v. Royal Auto. Group, Inc.,* 675 So.2d 144, 150 (Fla.Dist. Ct.App.1996); *SunBank/North Fla. Nat'l Ass'n v. Tuttle,* 683 So.2d 1189, 1190 (Fla. Dist.Ct.App.1996) (holding that the bank was not entitled to reform the note which stated that debtor would make monthly payments, less than what the parties intended, even though error was mutual mistake of parties, where debtor made all of the previous payments, was retired, and could not afford to pay any additional obligations to the bank and meet his current living expenses); *Alexander v. Kirkham,* 365 So.2d 1038, 1040 (Fla.Dist.Ct.App. 1978).

█ The equitable remedy of reformation is available where, due to mutual mistake, the written instrument does not accurately express the true intention or agreement of the parties.[1] *See, e.g., Unit-*

---

1. *Source 9 Fla. Jur.2d Cancellation, Recission,* *and Reformation of Instruments* § 57 (1997 &

ed States v. Weaver, 905 F.2d 1466, 1472 (11th Cir.1990); *Providence Square Ass'n v. Biancardi*, 507 So.2d 1366, 1369 (Fla. 1987); *Blumberg v. American Fire & Cas. Co.*, 51 So.2d 182, 184 (Fla.1951); *National Am. Ins. Co. v. Baxley*, 578 So.2d 441, 444 (Fla.Dist.Ct.App.1991); *Mueller v. Marks*, 576 So.2d 1337, 1338 (Fla.Dist.Ct.App. 1991).

■ A mutual mistake is mutual for the purpose of reformation when the parties agree to one thing and then, by a scrivener's error or inadvertence, express something different in the written instrument. *See Providence Square Ass'n v. Biancardi*, 507 So.2d 1366, 1372 (Fla.1987); *Circle Mortgage Corp. v. Kline*, 645 So.2d 75, 78 (Fla.Dist.Ct.App.1994); *National Am. Ins. Co. v. Baxley*, 578 So.2d 441, 444 (Fla.Dist. Ct.App.1991). But in order to constitute a ground for reformation, the mistake must be the same mistake made by all of the parties to the document. *See In re 6804 East, Inc.*, 42 B.R. 903, 907 (M.D.Fla.1984).

■ Reformation is improper due to a unilateral mistake. *See Alvarez v. Garcia*, 662 So.2d 1312, 1314 (Fla.Dist.Ct.App. 1995); *Adair v. Hightower*, 512 So.2d 982, 984 (Fla.Dist.Ct.App.1987); *American Fire & Indem. Corp. v. State Farm Auto. Ins. Co.* 483 So.2d 122, 123 (Fla.Dist.Ct. App.1986). Unless the evidence demonstrates proof of fraud or inequitable conduct by the other party to the transaction, the reforming of a contract by a court of equity is improper. *See United States v. Weaver*, 905 F.2d 1466, 1472 (11th Cir. 1990); *see also Providence Square Ass'n, Inc. v. Biancardi*, 507 So.2d 1366, 1370 (Fla.1987); *Ayers v. Thompson*, 536 So.2d 1151, 1154 (Fla.Dist.Ct.App.1988); *Department of Transp. v. Ronlee, Inc.*, 518 So.2d 1326, 1328 (Fla.Dist.Ct.App.1987).

The rationale is that in the case of unilateral mistake, there is no meeting of the minds, and, hence, no contract to be formed. *Continental Cas. Co. v. Ocala*, 99 Fla. 851, 127 So. 894, 896 (1930); *Langley v. Irons Land & Dev. Co.*, 94 Fla. 1010, 114 So. 769 (1927); *Rosenthal v. First Nat'l Fire Ins. Co.*, 74 Fla. 371, 380–81, 77 So. 92 (Fla.1917).

## B. *The Parties' Arguments*

In their December 1, 2000 Motion for Summary Judgment (doc. 52), Plaintiffs move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, Rule 56, for an Order dismissing the counterclaims asserted against them in Defendant's Second Amended Answer and Counterclaim (doc. 50), due to either the failure of Defendant to state a claim upon which relief can be granted, or because judgment in Plaintiffs' favor is required as a matter of law. In addition, Plaintiffs move this Court for a judgment on the pleadings in their favor, as well as an award of damages in the amount of $1,359,412.00, plus interest at the rate of 8.5% per annum from December 30, 1994, until payment in full is received by Plaintiffs (doc. 52).

In its Motion, Plaintiffs assert numerous arguments in support of judgment in their favor as a matter of law (doc. 52). First, according to Plaintiffs, based upon Sixth Circuit precedent interpreting Federal Rule of Civil Procedure 13(f), omitted counterclaims do not relate back to the original pleadings. Specifically, Plaintiffs assert that Rule 13(f) is not to be construed as an open-ended mechanism for avoiding the timely filing of counterclaims arising out of a single transaction. *See Health Corp. of Am., Inc. v. New Jersey Dental Assoc.*, 77 F.R.D. 488, 490 (D.N.J. 1978).

2000 Supp.).

In this case, Plaintiffs contend that Defendant's counterclaims asserting the equitable actions of reformation that were filed on November 1, 2000 (doc. 50), are clearly time-barred by the applicable statute of limitations under Florida law, which are governed by a four-year statute of limitations period. *See* Fla. Stat. § 95.11(3)(k). Plaintiffs also contend that claims founded on fraud and reformation actions in equity are also barred by a four year statute of limitations. *See* Fla. Stat. § 95.11(3)(j); *see also Western Group Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1357–58 (11th Cir. 1999); *Federal Ins. Co. v. Southwest Florida Retirement Ctr., Inc.*, 707 So.2d 1119, 1122 (Fla.1998); *Abbott Labs., Inc. v. General Elec. Capital*, 765 So.2d 737, 740 (Fla. Dist.Ct.App.2000).

Second, Plaintiffs assert that the statute of limitations has run out on Defendant's reformation counterclaim based on the doctrine of unilateral or mutual mistake. According to Plaintiffs, under Fla. Stat. § 95.11(2)(b), the five-year statute of limitations for an equitable claim based on the Agreement or the Closing Agreement began running as of December 30, 1994. *See Erickson v. Insurance Co. of N. Am.*, 66 Fla. 154, 63 So. 716, 717 (1913) (construing former § 95 .11(2)(b) as having a five-year limitations period for reformation claim on contracts).

Plaintiffs contend that December 30, 1994, is the date upon in which the cause of action accrued because this is the date on which Guaranty purportedly entered into an agreement which did not reflect its intentions. *See State Farm Mut. Auto. Ins. Co. v. Lee*, 678 So.2d 818, 821 (Fla. 1996); *Kolski v. Kolski*, 731 So.2d 169, 171 n. 1 (Fla.Dist.Ct.App.1999) (contract claim accrues upon breach or refusal to repay); *Fradley v. County of Dade*, 187 So.2d 48, 49 (Fla.Dist.Ct.App.1966). Plaintiffs argue that any claim by Defendant for reformation on the written instrument based on mistake, therefore, expired on December 30, 1999, almost a full year earlier than when Defendant first asserted its counterclaim and defense of mistake.

Third, Plaintiffs contend that, "[e]ven if Guaranty claims to rely upon the 'discovery rule,' it is clear that the date upon which it discovered its purported mistake about the contract was on March 24, 1995, when Mark Muething, AAG's Senior Vice President, sent a letter to Guaranty demanding the disputed payment" (*see* docs. 16, Ex. 24 & 52). Therefore, Plaintiffs argue that, "based upon any theory founded upon the written instruments, the absolute last date Guaranty could have filed its counterclaim was sometime in March of 2000" (doc. 52). Plaintiffs conclude that, since Defendant's counterclaims were filed well over six months later, they are now time-barred.

Fourth, Plaintiffs maintain that the same analysis applies to Defendant's reformation claim based on fraud. Specifically, Plaintiffs contend that, under Florida law, the limitations period for a fraud claim begins to run when the plaintiff has notice of a possible invasion of its legal rights, as opposed to knowledge of all elements of the cause of action. *See Korman v. Iglesias*, 825 F.Supp. 1010, 1015 (S.D.Fla.1993). A plaintiff is charged with knowledge of facts which could have been discovered in the exercise of due diligence. *Wilder v. Meyer*, 779 F.Supp. 164, 168 (S.D.Fla. 1991).

Plaintiffs allege that Defendant was clearly on notice and discovered the alleged error as set forth in Mark Muething's letter of March 25, 1995. Thus, Plaintiffs argue that, this is the date upon which Defendant's reformation claim based on fraud began to accrue. *See Troiano*, 549 So.2d at 1056 (reformation claim based on fraud subject to four year statute of limitations and begins to accrue upon dis-

covery of the error). Plaintiffs contend that the statute of limitations on Defendant's reformation counterclaim also expired well before the filing of Defendant's November 1, 2000 Second Amended Answer and Counterclaim.

Fifth, Plaintiffs assert that Defendant's "affirmative defenses" of mutual mistake and unilateral mistake seeking reformation should be stricken as procedurally improper because this Court never granted leave to Defendant to assert these additional defenses, and Plaintiffs never consented to the amendment. According to Plaintiffs, the Federal Rules of Civil Procedure require leave of court or written consent of the adverse party in order to assert additional defenses following the filing of the original answer. *See* Fed.R.Civ.P. 15(a).

■ A motion to strike under Federal Civil Procedure Rule 12(f) is the proper procedural method to challenge newly raised affirmative defenses. *See Old Dutch Farms, Inc. v. Milk Drivers and Dairy Employee Local Union No. 584*, 281 F.Supp. 971, 976 (E.D.N.Y.1968). Plaintiffs argue that because this Court neither granted leave to Defendant to raise these additional affirmative defenses, nor did Plaintiffs ever consent to the filing of the Second Amended Answer and Counterclaim, these newly asserted defenses should be stricken from the record as being improperly raised.

Sixth, Plaintiffs maintain that Defendant's improper assertion of additional "affirmative defenses" is more troubling because Defendant had previously filed its First Amended Answer on November 21, 1996 (*see* docs. 13 & 14), without objection by Plaintiffs, in order to clarify the earlier affirmative defenses asserted in its original Answer. The First Amended Answer took place over one year after Defendant filed its original Answer (*see* doc. 9), and approximately two and one-half years after the filing of Plaintiffs' Complaint (doc. 1).

Plaintiffs contend that, based on the assertions and defenses set forth in Defendant's Answers, Plaintiffs conducted extensive discovery, and the Parties ultimately submitted trial briefs, proposed findings of fact, and conclusions of law based on the record before this Court (*see* docs. 36–39). This Court's judgment and the Sixth Circuit's opinion are based upon the claims and defenses that were raised by the Parties before the Courts in question (*see* docs. 40 & 47).

Plaintiffs argue that, "no where in any of Guaranty's filings—until now—is there any mention of the defense of mutual or unilateral mistake" (doc. 52). Under Federal Rule of Civil Procedure 9(b), averments of mistake must be stated with particularity, specifically, in order to place the opposing party on notice of the circumstances giving rise to the averments, and to defend against the claims. *See* Fed.R.Civ.P. 9(b). Plaintiffs further argue that, "the law does not allow a party a second and third bite at the apple to raise waiver and omitted defenses—particularly following a judgment and an appeal" (*Id.*). *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (leave to amend may be denied when it would result in undue delay, prejudice to opposing party, or repeated failures to cure deficiencies).

Seventh, Plaintiffs assert that Defendant's affirmative defenses of mutual mistake and unilateral mistake seeking reformation are essentially the same as its counterclaims, and they should be treated as such. This is especially true since the factual allegations made and the relief sought are identical. Plaintiffs maintain that Defendant does not merely seek to avoid liabilities, but actually seeks to rewrite the Agreement. Plaintiffs argue that Defendant cannot circumvent the limitations period for a reformation action by

creatively pleading its counterclaims as affirmative defenses.

Plaintiffs further argue that Defendant's request to reform the contract is in reality a compulsory counterclaim and would ordinarily be barred under Florida law. *See Mascotte v. Municipal Liab. Self Insurers Program*, 444 So.2d 965, 966 (Fla.Dist.Ct. App.1983) ("It is in the interest of all litigants and the courts in cases where a dispute over a contract exists that all elements of that dispute are to be tried and resolved at one time and not by trying one tactic, then another, still another until all approaches are made. If there is a dispute resolve it, once and for all, one way or the other. This case is a prime example of what misery can be suffered and expense incurred by multiple bites at the same apple.").

Plaintiffs conclude that the "law of the case" doctrine precludes relitigation of issues explicitly or by necessary inference decided from the earlier disposition of the same case. Therefore, given the legal insufficiency of Defendant's reformation claim and the mandate given by the Sixth Circuit, this Court should enter judgment on the pleadings in Plaintiffs' favor.

In its Response filed on January 2, 2001 (doc. 55), Defendant asserts that, with full knowledge of the facts, the Court of Appeals was not content to simply reverse this Court, but instead, the Sixth Circuit remanded this case for specific consideration of the following issue: "whether the doctrines of mutual or unilateral mistake, or any other equitable doctrines, are applicable to reform the purchase contract" (doc. 47). In so doing, Defendant asserts that the Sixth Circuit has clearly indicated that there is merit to the consideration of these issues by this Court, in spite of Plaintiffs' Motion for Summary Judgment, for several reasons.

First, Defendant contends that it has properly plead the theories of unilateral and mutual mistake as affirmative defenses, and those counterclaims and defenses should be treated as such. Defendant argues that, since affirmative defenses are not time-barred by the Florida statutes of limitation, Defendant is also not barred from raising the defenses of mutual and/or unilateral mistake. *See Haven Fed. Savs. & Loan Ass'n v. Kirian*, 579 So.2d 730, 733 (Fla.1991) ("A counterclaim is a cause of action that seeks affirmative relief, while an affirmative defense defeats the plaintiff's cause of action by a denial or confession and avoidance."); *Moore Meats, Inc. v. Strawn*, 313 So.2d 660, 662 (Fla.1975) ("All affirmative defenses are pleas by way of confession and avoidance. They admit the allegations of the plea to which they are directed and allege additional facts that avoid the effect of the legal confession.").

Second, Defendant maintains that the defenses of mutual and unilateral mistake have been advanced specifically to avoid the liabilities imposed by the Sixth Circuit's interpretation of the contract between the Parties regarding the purchase of Western Pacific. These defenses do not seek affirmative relief. Defendants contend that, "[t]o the contrary, in the nature of a true defense, each acts to diminish Plaintiffs' cause of action in order to defeat Plaintiffs' potential recovery. Stated another way, the defenses of mutual and unilateral mistake, as presented in the context of the case at bar, are classic examples of confession and avoidance" (doc. 55).

Third, Defendant asserts that, "[s]hould the Court determine that Guaranty did in fact improperly plead its affirmative defenses of unilateral and mutual mistake, Guaranty would respectfully request leave to file an amended answer wherein the defenses could be properly plead to the Court's satisfaction" (doc. 55). While it is true that Defendant has plead mutual and

unilateral mistake as claims as well as defenses, according to Defendant, its request for reformation may properly be made as either a counterclaim or an affirmative defense.

Defendant argues that the two forms of pleading are not mutually exclusive and as a practical matter, distinctions between then are essentially irrelevant. Defendant further argues that this is acceptable in Florida courts, because those courts permit the defensive use of a time-barred claim. *See Allie v. Ionata*, 503 So.2d 1237, 1240 (Fla.1987) ("Limitation statutes are designed as shields to protect defendants against unreasonable delays in filing suits and to prevent unexpected enforcement of stale claims.... It is the recognition of the inapplicability of these purposes which has led courts to develop the rule that one may raise as a defense a claim which would otherwise be barred by the statute of limitations.").

Fourth, according to Defendant, the claims of mutual mistake and unilateral mistake "arise out of the same transaction" as the claims brought by Plaintiffs, and they have been advanced specifically to "reduce the amount" of the purchase price rebate demanded by Plaintiffs. *See Riley v. Montgomery*, 11 Ohio St.3d 75, 77, 463 N.E.2d 1246, 1248 (1984) ("Recoupment is a defense which arises out of the same transaction as plaintiff's claim, is a claim of right to reduce the amount demanded and can be had only to an extent sufficient to satisfy the plaintiff's claim.").

Fifth, Defendant contends that the applicable law of Florida clearly provides that Defendant is not precluded from raising, for defensive purposes, claims based on mutual and unilateral mistake even if such claims would be time-barred if asserted offensively. Defendant alleges that the employment of such claims in a defensive manner will in no way prejudice Plaintiffs. *See Allie*, 503 So.2d at 1240 ("A party who seeks affirmative relief, whether through an original complaint or a counterclaim, effectively asserts that he is prepared to prosecute all aspects of that matter. Having sufficient knowledge of the facts to support a complaint and sufficient evidence to prosecute that complaint, he must be prepared to defend against any affirmative defenses arising therefrom. Thus, once a party files an affirmative action, he cannot thereafter profess to be surprised by or prejudiced by affirmative defenses or compulsory counterclaims that stem from that action.").

Sixth, Defendant contends that the theories of mutual and unilateral mistake were properly plead counterclaims under Federal Rule of Civil Procedure 15(b). Defendant also contends that claims of unilateral and/or mutual mistake are clearly capable of support given the evidence that was presented at trial. Defendant argues that Plaintiffs gave their implied consent to the trial of the claims of unilateral and mutual mistake. Therefore, Defendant concludes that Plaintiffs cannot in good faith argue that it did not have the opportunity to respond to the arguments presented by Defendants in its trial briefs.

Seventh, Defendant asserts that, pursuant to Federal Rule of Procedure 15(b), Guaranty properly pleads the theories of unilateral and mutual mistake in its Second Amended Answer and Counterclaim. According to Defendant, "Plaintiff has cited no precedent clearly demonstrating that an amendment of the pleadings to conform to the evidence made pursuant to Rule 15(b) must 'relate back' to the filing of the original action under Rule 15(c). To the contrary, the Rule itself specifically provides that such an amendment may be made by 'any party at any time, even after judgment'" (doc. 55). *See* Fed. R. Civ. P 15(b).

Consequently, Defendant contends that any arguments made by Plaintiffs that such claims should be dismissed pursuant to their motion to be dismissed are without merit. *See* Fed.R.Civ.P. 12(b)(6). Alternatively, Defendant also contends that "[t]he process of determining whether either or both of the parties were mistaken in their choice of contract language inherently requires the resolution of factual issues and cannot be disposed of as a matter of law" (doc. 55). *See* Fed.R.Civ.P. 56.

In its Reply (doc. 56), Plaintiffs reiterate many of the points asserted in its Motion for Summary Judgment (doc. 52) and further moves this Court to grant judgment in their favor as a matter of law.

### C. *The Court's Holding*

Having reviewed this matter, the Court finds Plaintiffs' arguments in their Motion for Summary Judgment (doc. 52) and Reply (doc. 56) to be both persuasive and meritorious for several reasons.

■ First, the Court has reviewed all of the past pleadings, memoranda, trial briefs as well as the accompanying record to this action, but we were unable to find one prior reference to any assertions of counterclaims or affirmative defenses based on mutual or unilateral mistake by Defendant in this case. The Court believes that, to allow Defendant to assert such a claim or defense at such a late, post-appeal stage in the litigation would be highly unfair and prejudicial to Plaintiffs.

The prejudice to Plaintiffs of permitting these counterclaims and defenses at this late date is obvious. Allowing a party to apply evidence presented on a separate issue already in the case to a new, tenuous claim after the conclusion of trial and appeal would render Rule 15(b) a nullity. *See Apex Smelting Co. v. Burns*, 175 F.2d 978, 982 (7th Cir.1949) ("Litigants are not entitled to hide a point in an obscure pleading and present it for the first time

on review, but should fully and fairly acquaint the trial court with all matters relied upon.") (quoting *Maloney v. Brandt*, 123 F.2d 779, 782 (7th Cir.1941)).

Defendant offers no reasonable justification for its delay in moving to amend its First Amended Answer and assert additional counterclaims, as well as defenses, which are contrary to its previous theories of the case, particularly given that the factual predicate for its new theories of mistake, fraud, and reformation is the same predicate for its previous theory of latent ambiguity in the contract. Federal Civil Rule of Procedure 15(b) provides no basis for this Court to consider Defendant's new theories at this stage of the proceeding.

Second, even assuming for the moment that Defendants have presented "evidence" of mutual mistake, unilateral mistake or fraud in their Second Amended Answer and Counterclaim, we find that the evidence presented is insufficient to show that the alleged mistake or fraud was due to, caused by, contributed to, had knowledge of, or was on the part of Plaintiffs. Plaintiffs deny that there was any mistake or fraud, or prior knowledge of either on their part, and Defendants have not shown this Court evidence to suggest otherwise. In addition, it is important to note that the doctrine of recoupment has never been pleaded by Defendant in this case, either as a counterclaim or as a defense.

■ Third, Defendant does not dispute that under controlling Sixth Circuit precedent, an omitted counterclaim under Rule 13(f) does not relate back to the time of the original action. *See Stoner v. Terranella*, 372 F.2d 89, 91 (6th Cir.1967). Fundamental considerations of notice, justice, and fairness dictate that this Court deny Defendant's newly raised leave to raise the new defenses of mutual and unilateral mistake.

This is warranted since: (1) Plaintiffs have not impliedly or expressly consented to trying these new theories; (2) there exists insufficient evidence in the record in order to justify the addition of these new defenses, and (3) Plaintiffs will assuredly be prejudiced by the amendment of these additional, newly presented, affirmative defenses. *See* Fed.R.Civ.P. 15(b).

 Fourth, Defendant does not contest that the equitable action of reformation based upon mutual mistake, unilateral mistake or fraud are all still subject to the Florida statutes of limitations cited by Plaintiffs. Reformation is a request for affirmative relief which is clearly subject to the statute of limitations defenses. Reformation actions are barred when they are not timely raised, either as an original action, or as a compulsory counterclaim. *Mascotte v. Municipal Liab. Self Insurers Program,* 444 So.2d 965, 966 (Fla.Dist.Ct. App.1983).

 "Recoupment is a defense which arises out of the same transaction as plaintiff's claim, is a claim of right to reduce the amount demanded, and can be had only to an extent sufficient to satisfy the plaintiff's claim." *Riley v. Montgomery,* 11 Ohio St.3d 75, 77, 463 N.E.2d 1246, 1248 (1984). The defensive use of recoupment, by contrast, is not subject to statute of limitations requirements, but its use is permitted only in narrow, exceptional circumstances which do not exist here. *Allie v. Ionata,* 503 So.2d 1237, 1239 (Fla.1987); *Riley,* 463 N.E.2d at 1248–49 ( [Recoupment] ... does not confess the indebtedness alleged in the complaint ... but its proposition is that the plaintiff's claim is based on a particular contract or transaction and that to entitle the plaintiff to the sum claimed, he must prove compliance with certain obligations of the contract; that he failed to do so; and therefore that the defendant has been so damaged in the transaction so that the plaintiff is not enti-

tled to recover.) (quoting 20 Am.Jur.2d *Counterclaim, Recoupment and Set Offs* § 11 (1965)).

Fifth, Defendant does not dispute that its newly asserted reformation counterclaims are time-barred by the applicable Florida statutes of limitations, absent exceptional circumstances also not present here.

Sixth, Defendant's discussion regarding the alleged "defensive" use of its claims fails to recognize that it is asking this Court to rewrite a fully integrated, non-ambiguous contract between the Parties. In its Response, Defendant has failed to cite to this Court any Florida court case with similar facts as the one before us, which allowed for reformation of a contract beyond the statute of limitations period under the doctrine of recoupment.

Seventh, since this Court has already found Defendant's counterclaims to be time-barred, labeling them as affirmative defenses grounded in the same factual allegations and seeking the same legal relief, does not alter the fact that they are also time-barred as well.

Eighth, Defendant presents no credible argument that Plaintiffs impliedly, expressly, or through waiver consented to the trial of the claims of mutual mistake, unilateral mistake, or fraud seeking reformation of the contract. At best, Defendants can only point to a few incidental references to the record inferentially aimed at these theories. Upon closer examination, however, it is clear that Defendant is attempting to superimpose its new theories on the evidence it offered in regards to its defense and allegations involving the latent ambiguity in the Agreement.

Even assuming that Defendant offered some evidence on its newly raised theories, this dual type of evidence is insufficient to allow for an amendment under Rule 15(b).

*See International Harvester Credit Corp. v. East Coast Truck and RV Sales, Inc.,* 547 F.2d 888, 890 (5th Cir.1977); *Yellow Freight v. Martin,* 954 F.2d 353, 359 (6th Cir.1992) ("in this case, we do not believe that [defendant] clearly raised the issue of a § 405(a) violation or that [plaintiff] did or should have understood that some of the evidence was directed at a § 405(a) issue. Hence, we do not believe Yellow Freight impliedly consented to litigate the issue."); *MBI Motor Co. v. Lotus/East, Inc.,* 506 F.2d 709, 713 (6th Cir.1974) ("We conclude that the warranty of merchantability issue was not tried with the implied consent of the parties. Thus, it was error for the District Court to base its decision on the warranty theory, because Lotus/East thereby was deprived of an opportunity to present evidence to counter the new theory.")

Ninth, the Federal Rules of Civil Procedure mandate that averments of mistake must be stated "with particularity," specifically, for the purpose of placing the opposing party on fair notice of the circumstances giving rise to the averments, and to defend against the claims. *See* Feb. R. Civ. P. 9(b). Substantial deference is given to the parties' intentions in creating the contract. *Boston Old Colony Ins. Co. v. Popple,* 305 So.2d 877, 879 (Fla.Dist.Ct. App.1974).

 To overcome the strong presumption that the contract expresses the intent of the parties, under Florida law, the evidence of mistake, whether mutual or unilateral, must be "clear and convincing." *Allstate Ins. Co. v. Vanater,* 297 So.2d 293, 296 (Fla.1974); *Ayers v. Thompson,* 536 So.2d 1151, 1154 (Fla.Dist.Ct.App.1988); *Robinson v. Wright,* 425 So.2d 589, 589 (Fla.Dist.Ct.App.1982); *Watkins v. DeAdamich,* 187 So.2d 369, 371 (Fla.Dist.Ct. App.1966).

In this case, Defendant has not presented sufficient evidence satisfying these heightened pleading requirements based on the record before this Court. Furthermore, Defendant cannot seriously argue at such a late date that, Plaintiffs have had an opportunity to respond to Defendant's newly raised theories when the record is nearly bare as to any mention of the elements of mistake or fraud in order to satisfy these theories with the stated particularity and burden of proof required under Florida law.

Tenth, the doctrine of recoupment rests primarily on considerations of public policy and fairness. The doctrine of recoupment seeks to prevent plaintiffs from taking advantage of technical quirks in the law by filing lawsuits after defendants' counterclaims have become time-barred. *Rybovich Boat Works, Inc. v.. Atkins,* 585 So.2d 270, 271 (Fla.1991); *Allie v. Ionata,* 503 So.2d 1237, 1240 (Fla.1987).

For example, a counterclaim of recoupment outside the statute of limitations is impermissible where it involves the delivery of unique or non-tangible property such as real estate, specifically because the remedy contemplated is not a matter of right, but requires factual considerations of unfairness and unjustness. *Rybovich,* 585 So.2d at 272. Defendant's attempt to analogize its claims of mistake and fraud seeking reformation of the Parties's contract to the doctrine of recoupment to avoid the application of the statute of limitations bar is unsupported in fact or law. No authority exists to support the argument that a time-barred counterclaim for reformation can be revived under the legal theory of recoupment.

Finally, this Court concludes that Defendant's reformation and reformation claims/defenses are legally insufficient to proceed and that judgment on the pleadings should be rendered in Plaintiffs' favor. There is no longer any dispute over the results of the cash flow testing or the

amount of the purchase price agreement. Defendant does not challenge Plaintiffs' damages calculation in any other respect.

There are no material, disputed facts, or unresolved issues in this remanded action to preclude this Court from reaching final judgment in this matter. Plaintiffs are entitled to judgment on the pleadings, or in the alternative, summary judgment as a matter of law in the principal amount of $1,359,412.00, plus interest at the rate of 8.25% per annum from December 30, 1994, until payment is made in full by Defendant to Plaintiffs.

## CONCLUSION

After reviewing this matter and for the reasons stated above, the Court finds Plaintiffs' arguments in support of its Motion for Summary Judgment to be well-taken, and is, therefore, GRANTED (doc. 52). *See* Fed.R.Civ.P. 56.

In addition, the Court hereby STRIKES Defendant's newly raised "Affirmative Defenses" pleaded in GRC's Second Amended Answer and Counterclaim (doc. 50). *See* Fed.R.Civ.P. 12(f).

Accordingly, the Court hereby DIRECTS the Clerk of this Court to: (1) make an ENTRY of Judgment in favor of Plaintiffs, (2) AWARD Plaintiffs their damages in the amount of one million, three-hundred and fifty-nine thousand, four-hundred and twelve dollars ($1,359,-412 .00), plus interest at the annual rate of eight and one-half percent (8.5% annum) from December 30, 1994, until payment in full is made by Defendant and received by Plaintiffs; and (3) TERMINATE this action from this Court's active docket.

Having found in favor of Plaintiffs' Motion for Summary Judgment (doc. 52), this Court hereby DENIES Defendant's Motion to Extend the Discovery Deadline as being without merit or, in the alternative, as MOOT (doc. 59). Finally, the Final Pretrial Conference and Trial on the merits that were previously scheduled in the Court's September 15, 2000 Scheduling Order, is hereby VACATED (docs. 49 & 61).

SO ORDERED.